STATE, Respondent, *v.* PETERSON, Appellant.

(No. 7,549.)

(Submitted June 15, 1936. Decided June 20, 1936.)

[59 Pac. (2d) 61.]

*Messrs. O'Leary & Stromnes,* for Appellant, submitted a brief; *Mr. W. F. O'Leary* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Dousman* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Roy Peterson, has appealed from a judgment of conviction of the crime of rape and from an order denying him a new trial. By his specifications of error he challenges the sufficiency of the evidence to warrant a conviction, and specifies error in the court's ruling on the introduction of certain evidence, misconduct of the county attorney, the refusal of the court to give an offered instruction, and on the denial of his motion for a new trial.

There can be no question but that the testimony of the prosecutrix, if believed, respecting the commission of the crime, was amply sufficient to warrant the verdict and judgment of conviction. The girl testified that she went to the

Peterson home, about a block from where she lived with her parents, to see Mrs. Peterson, who was absent; that she sat on a couch for perhaps ten minutes, when Peterson came in and, with few preliminaries, forced her down on the couch and committed the act which she described in detail. At that time the girl was under thirteen years of age; she fixed the date as on or about the 28th day of June, 1934, by reason of the fact that it was a few days after a circus, to which she went, came to town. Thereafter she testified that Peterson took her to the circus in his car, but it was because of the fact of the circus, and not Peterson's taking her, caused her to fix the date mentioned. As corroboratory evidence she was permitted to testify to four or five similar acts, committed under almost identical circumstances during the year following, one of these being fixed as some time in August, 1934.

The defendant proved that he did not take the girl to the circus in 1934 but did in 1935, and in rebuttal the girl admitted the error, although on cross-examination she had said that he took her to the circus in 1934, and again in 1935.

For the defense it was shown that the girl's reputation for truth and veracity was bad, and, on her original cross-examination, she admitted that, while in charge of the Sisters at the House of the Good Shepherd, she had told counsel for the defendant, in the presence of a Sister of Charity, that she never had had intercourse with Peterson, and admitted to having then said, "I blamed this on to Peterson * * * because I did not know where Emmet Mustapha or Jess were." In this connection the Sister testified that at the time the girl was very nervous, and the girl excused her statements on the ground that she was frightened and embarrassed.

It was also shown that, during the month of August, 1934, the defendant, with his wife, was in California, having left this state on July 27 and returned on September 3.

These matters tend to discredit, but not destroy, the testimony of the prosecutrix. "A witness false in one part of his testimony is to be distrusted in others" (sec. 10672, subd. 3, Rev. Codes 1921), and "a witness may be impeached" by con-

tradictory evidence, evidence that his general reputation for truth and integrity is bad, or that he has made at other times statements inconsistent with his present testimony (secs. 10668, 10669, Id.) ; but while proof of falsity in one part of a witness' testimony, inconsistent statements at other times, contradictory evidence, and reputation may discredit the witness, such proof goes only to the credibility of the witness, of which the jury remains the sole judge, as well as the weight to be given thereto.

It follows that, although the jury may reject the false ■ testimony and "assume, regarding the rest of it, an attitude of distrust," the jurors may render a verdict based upon the testimony of such witness if after examination they find it worthy of belief. (*State* v. *Penna,* 35 Mont. 535, 90 Pac. 787; *Vande Veegaete* v. *Vande Veegaete,* 75 Mont. 52, 243 Pac. 1082; *State* v. *Hogan,* 100 Mont. 434, 49 Pac. (2d) 446.) And the extent to which impeaching evidence impaired the credibility of a witness assailed is a question exclusively for the jury. (*State* v. *Duncan,* 82 Mont. 170 266 Pac. 400.) The following quotation is pertinent here: "Counsel * * * insist that a conviction can be had on the uncorroborated testimony of the prosecutrix only when she is entitled to full credit, and that by reason of her obvious falsehoods and self-contradictions, the prosecutrix at bar ought, as a matter of law, to be held unworthy of credit. This cannot be done. Only in those rare cases where the story told is so inherently improbable or is so nullified by material self-contradictions that no fair-minded person could believe it may we say that no firm foundation exists for the verdict based upon it. * * * The falsehoods and inconsistencies here pointed out are not of this description; they relate to collateral details." (*State* v. *Gaimos,* 53 Mont. 118, 162 Pac. 596, 599.)

The Sister in charge of the girl having stated, "The nature ■ of the untruthfulness that I am speaking of in this case, is a little more than usual," the question was asked, "Was there any peculiarity about her particular kind of lying?" and objection was sustained thereto. No error was committed.

Impeachment on the ground of reputation is confined to general reputation. The statement of the witness was a part of a narrative in which she sufficiently explained her meaning, and the fact that the statement was made in the course of cross-examination did not warrant going into the matter further.

The evidence having disclosed that Mrs. Peterson was away from home for indefinite periods on numerous occasions and that two young married women, formerly Marie and Norah Jackson, had lived at the Peterson home during certain of such times, the county attorney indulged in a line of cross-examination of the defendant on which the defense predicates error as constituting misconduct. First, the defendant was asked if, as a matter of fact, his wife had not left him quite often, to which he replied, "No." "Q. And she had you arrested several times?" to which objection was sustained, the court stating, "And do not ask those questions like that." The court then sustained objections to the questions: "Did you have any difficulty with Laurence Jackson, the brother of Marie and Norah Jackson?" "Have you ever been alone (at your home) there with Frances Pfeiffer or with any other young girls during that period of time?" "When your wife came back from Fort Peck during this year, did you go up after her or did she come down otherwise?" The defense contends that this was done to degrade the witness; to get the question, without regard to the answer, before the jury.

Questions asked for the purpose of getting before the jury the assumption of damaging facts which cannot be proved, and thus impress upon their minds the probability of the existence of the assumed facts, constitute misconduct and will warrant a reversal, unless the court can see that the asking of the questions did not prejudice the defendant. (*State* v. *Shannon*, 95 Mont. 280, 26 Pac. (2d) 360; *State* v. *Kanakaris*, 54 Mont. 180, 169 Pac. 42; *State* v. *Jones*, 48 Mont. 505, 139 Pac. 441.)

In view of the testimony of the witness on direct examination, the questions above, with the exception of that as to

whether his wife had not had him arrested on several occasions, were, perhaps, justified on cross-examination, and, on the whole, we cannot see that the conduct of the county attorney was flagrant or that the questions could have prejudiced the defendant in this case. It is not like the situation shown in the *Shannon Case* and the *Kanakaris Case*, where it was sought by innuendo to give the impression that the defendant had committed numerous other crimes and was, therefore, probably guilty of the crime charged. While proof of like crimes is admissible for the purpose of showing intent, even proof that a wife has had her husband arrested would, in nowise, tend to prove intent to commit rape.

The prosecutrix having admitted on cross-examination that she had told counsel, in the presence of the Sister in whose charge she was, that she charged Peterson with the offense because "she did not know where Emmet Mustapha and Jess were," was asked the question, "Now you meant by that that you have had intercourse with Emmet Mustapha and Jess?" Objection to the question was sustained. The ruling was proper. Her contradictory statement at another time was proved for the purpose of impeachment, and it was immaterial in the case at bar whether or not she had ever had intercourse with other men. Her statement made to counsel was to be considered by the jury merely for the purpose of determining whether or not she was telling the truth on the stand. (*State v. Richardson,* 63 Mont. 322, 207 Pac. 124.)

The state having failed to show that the prosecutrix made complaint to anyone as to the alleged offense, or that she was examined by a doctor, the defense asked her on cross-examination, "Now, who did you first tell about this act?" Objection to the question was sustained and error is assigned to the ruling.

Complacency on the part of the girl was no defense, and the fact that she told no one of the alleged offense shortly after the time when she claims it was committed might be the subject of comment, but, as the matter was not gone into by

the prosecution, the question was not proper on cross-examination.

Error is predicated on the court's refusal to give the following cautionary instruction: "The court instructs the jury that a charge of this nature is particularly difficult for the defendant to clear himself of. No charge can be more easily made and none more difficult to disprove. From the nature of the case, the complaining witness and the defendant are generally the only witnesses. You should be satisfied to a moral certainty and beyond a reasonable doubt, that the case is made out by witnesses and corroborating evidence, if any, before you find the defendant guilty, if you find him guilty. The law does not require in this character of case that the prosecuting witness be supported by another witness or other corroborating circumstances but does require that you examine her testimony with caution."

While this court has said: "It is undoubtedly true that charges such as this are easy to make and hard to defend against, even by one who is guiltless; and where the state relies upon the uncorroborated testimony of the prosecutrix, the jury should be cautious of convicting upon such evidence" (*State* v. *Gaimos,* supra), it has twice declared that the trial court did not commit error in refusing to give an instruction similar to the one under discussion. (*State* v. *Keeler,* 52 Mont. 205, 156 Pac. 1080, Ann. Cas. 1917E, 619, L. R. A. 1916E, 472; *State* v. *Mihalovich,* 69 Mont. 579, 222 Pac. 695.) In each of these cases the propriety of giving such an instruction in any case is doubted, and the court's statement indicates that, if proper in any case, it is only where there is the suggestion of private malice and revenge apparent. Nothing of the kind appears in the case at bar.

In California it is held that such an instruction was proper when the state relies upon "the sole testimony of the prosecutrix, unsupported by facts or circumstances corroborating it" (*People* v. *Currie,* 16 Cal. App. 731, 117 Pac. 941, 943), and it was on the premise that the testimony of the prosecutrix was uncorroborated that the statement of this court in the

*Gaimos Case* was made. Here there is corroboration in the testimony of near neighbors to the effect that this girl, repeatedly. told by Mrs. Peterson to stay away from the house, was seen on several occasions coming from the Peterson house when, apparently, no one but Peterson was there, and on a number of occasions was seen going with Peterson to his garage. The court did not err in refusing the instruction.

As we find no reversible error in the record, and the evidence is sufficient to support the verdict, the court did not err in denying defendant's motion for a new trial.

Judgment and order affirmed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.