STATE, RESPONDENT, v. TRAUFER, APPELLANT.

(No. 7,948.)

(Submitted October 10, 1939. Decided November 4, 1939.)

[97 Pac. (2d) 336.]

*Mr. Wellington D. Rankin, Mr. Arthur P. Acher* and *Mr. Stanley R. Foot,* for Appellant, submitted a brief; *Mr. Acher* and *Mr. Foot* argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Mark H. Derr,* Assistant Attorney General, for the State, submitted a brief; *Mr. Derr* argued the cause orally.

MR. JUSTICE ARNOLD delivered the opinion of the court.

The defendant was convicted by a jury in the district court of Lewis and Clark county on December 9, 1938, of the crime of rape committed by having intercourse with a female person under the age of eighteen years, she being of the age of fifteen at the time of the alleged act. The jury fixed punishment at two years in the state prison, on which verdict judgment and sentence were pronounced on December 14, 1938. The defendant appealed from the judgment.

No objections were offered to any of the instructions given, and hence there is no issue on this appeal as to the law of the case. The defendant made several assignments of error which may be embraced under two or three heads. First, that the *corpus delicti* had not been proven, and, second, that the court erred in permitting certain witnesses to testify as to what other witnesses in the case had told them with reference to the alleged crime. Third, that the court erred in failing to advise the jury to return a verdict of not guilty, and in rendering judgment upon the verdict upon the ground that there was no substantial evidence to support the verdict. Therefore, it is necessary only to review the evidence to determine whether or not the assignments of error are well taken.

The complaint was signed by Arthur F. McDonnell, father of Agnes McDonnell, the girl involved in the case. He testified that his daughter, who was a student at the Cathedral High School in Helena, had left her home in the town of East Helena on October 21, 1938, that being Friday, ostensibly to go to school. He had given her permission to go to a show that night

after school with a girl friend. She failed to return home after the show and the next day in the afternoon telephoned her father that she would not be home. She refused to tell him where she was and, being unable to locate her, he enlisted the aid of the police for that purpose. After being found on Monday, October 24th, she was taken by the officers from the automobile of the defendant while they were driving down a street in Helena. The father was notified and called at the office of the county attorney, where he signed the complaint against the defendant.

At the conclusion of his testimony the daughter Agnes was called. After preliminary questions and answers, she stated that on Friday, October 21st, as she was about to take a bus to school, the defendant drove up in his car in East Helena, whereupon she got in. He took her to a Mrs. Armstrong's apartment in Helena where she stayed until Monday, not going to school at any time after being picked up. She stated that she stayed with the defendant Traufer and slept with Mrs. Armstrong, and that Traufer slept with a boarder of Mrs. Armstrong by the name of Jack Jacks. She stated on direct examination that she did not have intercourse with the defendant during that time. At this juncture, at the request of the county attorney, the court granted him permission to cross-examine the witness upon his representation that she had made prior contradictory statements, and for the further reason that she showed a friendly attitude toward defendant and a hostile one toward the state. In such cross-examination she was asked if she had made a statement when taken before Frank Thefault, probation officer, and Floyd Small, deputy county attorney, to the effect that she had had sexual intercourse with the defendant. She answered, "I don't remember exactly. I was highly nervous and might have said most anything." Further on in her testimony concerning the making of such prior admission she said: "Yes, I believe I did." On cross-examination by counsel for the defendant on the same subject, she said: "I wasn't telling the truth. I don't believe I knew what I was saying at that time. I got excited. I am not sure what reason, if any, I had for making

a statement like that in the presence of those two men. I didn't fully understand their questions when they asked me. At this time I want to tell this court and jury there was no act of sexual intercourse between me and the defendant.''

Thereupon Dorothy Armstrong, a witness for the state, was called. The evidence developed that she was a married woman nineteen years old, the mother of a baby, living in a three-room apartment, her husband having previously left her; that living in the apartment was a male boarder by the name of Jack Jacks. She likewise testified that she had gone to East Helena with Traufer at his invitation and had brought Agnes McDonnell to her apartment, and that Traufer stayed at her place from the time Agnes arrived until Monday, having never previously stayed there; that Agnes slept with her and that the defendant slept with the boarder, Jacks. Thereupon the same procedure was had as in the case of Agnes McDonnell, the court granting the county attorney permission to cross-examine his own witness for the reasons previously mentioned. She was asked if she recalled on that day shortly before the hearing she had stated in the presence of the county attorney and Mr. Small that the defendant Traufer, Agnes McDonnell and herself had slept in the same bed between October 21 and October 23. In answer she stated that that was in the affidavit she had signed, but ''I didn't know just exactly what I was signing at the time I signed it. I signed a statement to that effect earlier but I was rather excited when I signed it.'' She further stated that she might have told the county attorney in his office ''just a few minutes ago''—just before the case opened—that that was true and she was going to tell the jury those things. She reaffirmed other matters upon questions as to whether she had previously made such statements in regard to picking up Agnes McDonnell and in regard to her stay at her apartment. She was then questioned as to a previous written statement reading as follows: '' 'Question. Then the three nights that Bill stayed there, Agnes, Bill and you slept in your bed? Answer: Yes, in my bed.' Is that correct?'' To which she answered, ''I don't know. It could be correct, I don't recall. I don't recall.''

As to other contradictory statements the following questions from her previously signed statement were read to her: "You say that to your knowledge, at least once on each of these nights Bill and Agnes had intercourse, and you answered, 'yes, that is right. As far as I know that is all, but I know that it was at least one.' Was that correct? Answer: No. Question: Is that the statement you made? Answer: No, it wasn't three nights. Question: It wasn't three nights. Answer: I can't remember now. No, I didn't see them. Question: What would you say at this time, though? Answer: I don't know exactly. I know what I would do if I were sleeping with someone. Question: She was sleeping with him then; is that the point? Answer: Not exactly, no. Question: Not exactly, what do you mean? Answer: She was staying with him, but not sleeping with him. Question: But you said so in my office, didn't you? Answer: Yes, I did."

Referring again to the statement which the witness had previously signed, concerning her objection to crowded sleeping arrangements, the county attorney on cross-examination asked her: "Do you recall whether or not you answered the question at that time? 'Well, I didn't object on the first two nights, but I told her if this was going to continue she would have to fix some other arrangements as none of us were getting much sleep, and it was quite crowded and that he would have to go home or he would have to sleep with Jack.' Is that what you said at that time? Answer: I don't know exactly whether I did or not. Question: That is what it says here. Answer: When I signed that I was all excited and messed up." She admitted that there had been drinking of liquor in her apartment while Agnes McDonnell was there with the defendant.

Floyd O. Small thereupon took the stand and testified that he was the deputy county attorney and had investigated the defendant's case, discussing it with Agnes McDonnell on Monday, October 24th, in the presence of Frank Thefault, probation officer, right after she was picked up from defendant's automobile; that she stated then she had had intercourse with defendant; that at the time defendant under no offer or inducements or

threats or promises voluntarily told him in answer to a question that he had had sexual intercourse with the girl, Agnes McDonnell, in the Armstrong home and also in his automobile. He also told the deputy county attorney that he and the McDonnell girl and Dorothy Armstrong slept in one bed.

Frank Thefault was thereafter called as a witness for the state and testified he was the probation officer, and that Agnes McDonnell told him in the presence of Mr. Small in the county attorney's office, that she had had sexual intercourse with the defendant. He further corroborated the statements of Small as to the confession of the defendant that he had had intercourse with Agnes McDonnell, adding that the defendant also stated that he had used a contraceptive.

Thereafter the defendant took the stand and admitted that he had been introduced to Agnes McDonnell about a month previous to the time he picked her up in East Helena, and further admitted that he went to East Helena and picked her up and brought her to the apartment of Dorothy Armstrong. He stated he had not previously roomed at the Armstrong apartment; that he stayed there during the period of time from Friday, October 21st, to Monday, October 24th, when he was arrested. He stated that he heard the testimony that had been given in this case and that it was false, and that he never had intercourse with Agnes McDonnell. On cross-examination he was asked concerning his conversation with Mr. Small and Mr. Thefault, and again denied that he said that he had sexual intercourse with her. He was asked why he had said that at the time, to which he replied: ''I am afraid I didn't. Mr. Small told me all these things and I invariably said, 'You seem to know all the answers, Mr. Small.' '' As to his statement concerning contraceptives he said: ''I don't recall talking about the use of any birth control devices. No, but I wouldn't say I didn't.'' He admitted that he did not call up her father during the time he was with the girl and tell him where she was. The defendant thereupon closed his case with the testimony of three character witnesses.

Apparently the jury believed the confession of the defendant as related by the deputy county attorney Small and pro-

bation officer Thefault. The defendant offered no evidence that the confession had been improperly obtained, merely denying that he had made it. An extrajudicial confession of the defendant, standing alone, is not sufficient to prove the *corpus delicti*, but such confession may be considered with independent corrobative facts not of themselves sufficient to prove the *corpus delicti* beyond a reasonable doubt. (*Messel* v. *State*, 176 Ind. 214, 95 N. E. 565.) In proving the *corpus delicti*, direct and positive proof is not necessary. It may be proven by circumstantial evidence. (*State* v. *Dixson*, 80 Mont. 181, 260 Pac. 138; 16 C. J. 772.)

In 40 A. L. R., at page 460, we find numerous cases of the several jurisdictions where there is practical uniformity in the law pertaining to corroboration of confessions in sexual offenses. Those cases hold that a mere naked confession, uncorroborated by any circumstances inspiring belief in the truth of the confession, is not sufficient to warrant the conviction of the accused. Also it is noted that confessions proved are necessarily weak or strong evidence according to the circumstances attending the making and the proving of them. It is further noted in the annotations to the cases above referred to, that corroborative evidence tending to establish the *corpus delicti*, that is, the fact that the crime has been committed, need not be such as would establish the fact beyond a reasonable doubt apart from the confession.

In the Montana case of *State* v. *Peterson*, 102 Mont. 495, 59 Pac. (2d) 61, a judgment of conviction of the crime of rape was affirmed where the prosecutrix was the only witness who testified directly concerning the act of the defendant. She likewise was a girl under eighteen years of age, and had made a statement prior to trial which contradicted her testimony. The corroborative evidence consisted of the testimony of near neighbors that the girl, who had been repeatedly told by the wife of the defendant to stay away from their house, was seen on several occasions coming from the Peterson house when apparently no one but Peterson was there, and on a number of occasions was seen going

with Peterson to his garage. There was no confession in the *Peterson Case,* as in the case now before us.

Aside from the defendant's confession which was admitted ▉ after proper foundation was laid, we have the fact that the girl involved in the prosecution was of extremely tender years; that the defendant was a grown and mature man; that he procured her to go with him to the apartment of Mrs. Armstrong where he had not previously resided; that he stayed with the girl at that place for three or four days; that he did not explain satisfactorily why he felt obliged to go to East Helena, pick her up and bring her to Helena under circumstances bordering on abduction; that he made no effort to disclose her whereabouts to her father, who he knew was searching for his daughter. Furthermore, in the defendant's testimony we observe that in discussing with officers the question of contraceptives, he stated that he would not say that he did not talk about the use of them. It is also observed that much of the testimony of Dorothy Armstrong cannot be regarded as a successful effort in denying previous contradictory statements which she was charged with having made. It was for the jury to say what weight should be given this testimony, wherever it constituted reaffirmation of her previous statements.

Moreover, we have in the record by way of impeaching testimony, the statement made by the girl, Agnes McDonnell, that she had had intercourse with defendant. This statement was made to officers immediately after she was removed from the automobile of the defendant on a public street in Helena near the close of the fourth day of her stay with defendant.

In the case of *State* v. *Cardwell,* 90 Kan. 606, 135 Pac. 597, L. R. A. 1916B, 745, we find the facts very similar to those in this case. In the prosecution charging the defendant with having committed statutory rape the defendant made an extrajudicial confession. The prosecutrix prior to the trial had made statements to officers charging the defendant with repeated acts of sexual intercourse with herself. On the trial she denied making the statements. A son of the defendant likewise had made statements prior to the trial that he had seen the defendant com-

mitting the act with the prosecutrix. On the trial he likewise denied the statements. The defendant on the trial repudiated his extrajudicial confession. The court held that there was no direct evidence of the *corpus delicti* or that the defendant was at any time the perpetrator of the crime charged; that the case of the state rested upon extrajudicial admissions and upon circumstantial evidence; and that the law demands, and only demands, the best proof of the *corpus delicti* which in the nature of the case is obtainable

It is true that on the witness-stand Agnes McDonnell denied ▆ having had intercourse with the defendant, but the testimony of the officers that she made contradictory statements before the trial was admissible under the provisions of section 10666, Revised Codes of 1935, which provides that ''The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section 10669.''

The defendant virtually enticed Agnes McDonnell away from her father's care and authority, and placed her in a house with an unsavory odor strong enough to break through the cold record before us. Undoubtedly the jury, in considering the weight to be given all of the evidence, took these circumstances and facts into consideration as corroboratory of the defendant's confession, and particularly as showing his motive and intent.

Although proof of previous contradictory statements has the ▆▆ effect of neutralizing the testimony of the witness, as held in the recent Montana case of *State* v. *Kinghorn,* 109 Mont. 22, 93 Pac. (2d) 964, here, as in that case, there is sufficient other evidence aside from the contradictory statements of certain witnesses, from which the jury could determine that the defendant was guilty. A party is not bound to accept the testimony of his own witness as correct, particularly in cases of this nature where there is motive in changing the effect of a previously made statement. (Jones on Evidence, 4th ed., sec. 857.)

It is noted in the record that the witness Dorothy Armstrong admitted that she had been approached by a person requesting her to change her testimony, but she could not or would not give the name of the person who had so approached her, and also that Agnes McDonnell still liked the defendant. Reading the testimony of the witnesses Agnes McDonnell and Dorothy Armstrong, which in a few instances purports to contradict previous incriminating statements made by them, one is struck by the equivocation of these witnesses and apparent effort to dissemble so as to benefit the defendant. This should add strength rather than weakness to other testimony in the case.

It is clear that the evidence in this case was competent and that the court did not err in admitting it. It further appears that the evidence was sufficient to warrant the jury in finding the defendant guilty. The jury being able to see the demeanor of the witnesses on the stand, was in a more advantageous position than is this court to determine the weight of the evidence and the credibility of the witnesses.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ERICKSON concur.

MR. JUSTICE ANGSTMAN:

I concur in the result announced in the foregoing opinion, but not in all that is stated in it. The case of *State* v. *Peterson*, 102 Mont. 495, 59 Pac. (2d) 61, cited in the majority opinion, in my opinion has no application here. There the prosecutrix testified under oath that defendant did have intercourse with her. Here the prosecutrix under oath says the defendant did not have intercourse with her. Her statement to the contrary made to officers, in my opinion cannot be resorted to as substantive evidence. It was, of course, admissible for impeachment purposes, but its effect was simply to neutralize her statement on the witness-stand. (*State* v. *Kinghorn*, 109 Mont. 22, 93 Pac. (2d) 964.)

I am able to concur in an affirmance of the judgment for the reason that the confession of the defendant may be considered along with other evidence to establish the *corpus delicti*. (*State* v. *LaLouche*, 116 Conn. 691, 166 Atl. 252; *Cross* v. *State*, 96 Fla. 768, 119 So. 380; *Commonwealth* v. *Zelenski*, 287 Mass. 125, 191 N. E. 355; *State* v. *McGuire*, 327 Mo. 1176, 39 S. W. (2d) 523; *Mangum* v. *United States*, (9 Cir.) 289 Fed. 213.) And for the reason that where there has been a confession much slighter proof is required to establish the *corpus delicti* than is necessary otherwise. (*Whittaker* v. *State*, 169 Miss. 517, 142 So. 474, and compare *State* v. *Taylor*, 119 Kan. 260, 237 Pac. 1053; *State* v. *Bell*, 121 Kan. 866, 250 Pac. 281.)

Hence, under the liberal use of circumstantial evidence to prove a crime, adopted by the majority opinion in *State* v. *Kinghorn*, supra, the circumstances here, coupled with the confession of defendant, were sufficient to prove the *corpus delicti*.

Rehearing denied January 5, 1940.