## COOPER *v.* STATE

[No. 174, October Term, 1953.]

164

*Decided June 25, 1954.*

*Motion for rehearing, filed July 24, 1954, denied July 26, 1954.*

*Petition for certiorari, filed September 23, 1954. No. 362, Sup. Ct. October Term, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry E. Goertz* and *Joseph Loeffler*, with whom was *Bernard J. Flynn*, on the brief, for appellant.

*W. Giles Parker*, Assistant Attorney General, with whom were *Edward D. E. Rollins*, Attorney General, *Anselm Sodaro*, State's Attorney for Baltimore City, *J. Harold Grady* and *Theodore C. Water, Jr.*, Assistant State's Attorneys for Baltimore City, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

Charles Cooper, the appellant, was convicted by the Criminal Court of Baltimore, sitting without a jury, of assault upon a woman child under the age of fourteen, with intent to carnally know her, in violation of Code (1951), Art. 27, Sec. 14, under the fourth count of a six count indictment which also charged rape and statu-

tory rape. He was found not guilty on all counts but the fourth. He appeals from the judgment and sentence which followed his conviction, relying on the claim that the evidence not only was insufficient to convict but actually shows his innocence, particularly if an oral confession be rejected, as he urges it should have been.

The State proved that the appellant, an eighteen year old boy, regularly employed, picked up five other boys and two girls and started on a ride in his automobile about ten o'clock one July night. After cruising aimlessly for a while, he parked at a place at the foot of Clinton Street on private property referred to as Thompson's. There, all of the riders got out except one William Krug and the prosecuting witness, an eleven year old girl, who stayed on the back seat. The others walked away down the road. After a few minutes, Krug came from the car and told the appellant that the girl wanted to see him, and as he walked towards the car, she called him. He got in the back seat of the car with her. There are different versions given as to what then ensued. The prosecutrix testifies that she was actually and forcibly raped by the appellant. He testified that he was the innocent and unwilling victim of an assault by the prosecutrix, who committed an act of perversion. The oral confession of the appellant to the police is to the effect that he unsuccessfully attempted to have intercourse with the prosecutrix and then was the willing victim of perversion until his sexual desires were satisfied.

The prosecutrix engaged in sexual activity with a third boy, one Avery (at times called Avaria or Aburn by the witnesses). He was in the car with her when the cruising police car drove up, according to the testimony of Officers Thomas and Markowitz, who said that Krug and Cooper were standing with the other girl near the car. The police asked what was going on, saw nothing wrong and received no complaints from the girls who did not seem scared or disheveled. Therefore, they merely asked for the ages, names and addresses of the boys and girls (and were told that all were sixteen

except Cooper, who was eighteen), and, according to their standing orders, because the place was private property and "a dark and lonely spot", ordered them to leave immediately and not to park there.

The appellant's main claim of error is that the testimony of the prosecutrix was so contradictory, unreasonable, inconsistent and improbable as to be totally unreliable and without probative force, in that she said that Cooper was the boy in the car at the time the police arrived, when, actually, it was said by all other witnesses that the boy then in the car was Avery. It is sought to be shown that the offense for which Cooper was convicted was actually committed by Avery and that the prosecutrix is mistaken in her identity of Cooper, and claims that it was he only because he is the owner of the automobile and the one she sat next to on the drive. Rule 7 (c) of the Criminal Rules of Practice and Procedure provides that on appeal from a criminal charge which has been tried by the court, this Court may review both the law and the evidence to determine whether the evidence is sufficient to sustain the conviction and that the verdict of the trial court shall not be set aside on the evidence "* * * unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." The testimony of the prosecuting witness in this case was substantiated, to some extent at least, by the appellant's testimony from the stand—that he was in the car alone with the prosecutrix and that sexual activity was then engaged in. There is no doubt that the time, the place, and the opportunity for the commission of the crime charged was proven. If there be added to the admissions made by the appellant from the witness stand, the confession he gave to the police when he was arrested and charged with the crime, namely, that he had attempted to have intercourse with the prosecutrix, there was ample evidence before the trier of the facts to sustain a conviction of assault with intent to carnally know, if believed. The crime for which the appellant was

convicted requires the proving of three elements: first, the assault, without regard to the degree of violence used; second, the intent to carnally know; and third, that the age of the girl be under fourteen. It is admitted that the prosecutrix was under the age of fourteen, and her testimony and the confession, corroborated by the admission from the stand, provided a basis for finding that the first and second elements were present. We cannot say that the verdict of the trial court was clearly erroneous on the evidence when it decided that there had been assault with intent to carnally know.

We have arrived at this conclusion on the basis that the oral confession, which was objected to, was properly admitted in evidence. The appellant's objections to the confession were three: (a) that it was not free and voluntary; (b) that Captain Gribbin, to whom it was given, made notes of it in his own language; and (c) that it was without corroboration. It was shown that after appellant had let the girls out of the car at the same corner at which he had picked them up, they did not return home but stayed away for some eight days. When the appellant was told by a police officer, who called at his home the next evening, that they were missing, he went to the corner where he had let them out to see if any of the boys knew where they were. While at the corner, the father of the prosecutrix and two other men insisted that he go to the Eastern Police Station with them, which he did. On arrival, he was questioned by two officers, who indicated that they did not believe that he did not know the whereabouts of the girls, and, according to the accused, told him that if he did not tell the whole truth, they would make it hard on him. The next day, two policemen came to his house, telling him that the girls were still missing and that they did not believe his story. The day following that, two other police officers asked him to sit with them in the car across the street from his home to discuss the matter and, according to the appellant, one of them told him if he wasn't telling everything: "* * * they would stick

it in me and break it off." It was some two weeks after this last incident that appellant was arrested and taken to the police station, where, in Captain Gribbin's office, he gave the confession.

The burden is upon the State to show to the satisfaction of the court that a confession was a free and voluntary one, that no force or coercion was exercised to obtain it, and that no hope or promise was held out as an inducement to the giving. *Glover v. State,* 202 Md. 522, 525. Each of the officers who went to arrest the appellant and each who was present in the Captain's room when the confession was made, testified that no force was used, no threats were made and no inducements promised. Captain Gribbin so testified specifically. The appellant himself does not claim that he was subjected to physical or mental duress or that he was threatened or offered any inducement to make the statement at the time it was given. The interview lasted for ten or twelve minutes in a room with the door open. We find nothing in the record to justify a conclusion that the trial court was wrong in finding that the confession was free and voluntary and properly admissible. The effort of the appellant to invalidate it because he had been scared by the visits of the police two weeks before, must fail. It is not charged that the fear continued in the two week interval or that fear prompted the confession when it was made. The police officers, who were accused by the appellant of telling him that: ". . . they would stick it in him and break it off" flatly denied making such a statement. We are not unmindful of the principle underlying the rule that when a confession is found to be involuntary and inadmissible, a presumption exists that a subsequent confession was made by reason of the influence which produced the first, and before the second can be introduced, this presumption must be overcome by clear and convincing evidence; *Edwards v. State,* 194 Md. 387, 400, but that is not this case. At the time he claims to have been afraid, the appellant not only made no confession or admission, but denied

all knowledge of the whereabouts of the girls or of any untoward action in regard to them. If the appellant was afraid, as he claims, his fear was insufficient to induce him to confess when the whole truth was demanded and, as has been said, he does not even claim that it existed at the time that he did confess, or that it then induced him to do so.

The appellant's contention that the confession should not be admitted because it was not taken down verbatim does not help him. Captain Gribbin made notes of the statements which the boy made during the twelve to fifteen minute interview, and an hour or so later, wrote them up and had them typewritten. At the trial, appellant's counsel agreed that he might use the typewritten notes to refresh his recollection. The Captain testified that the heart of the confession was in the exact words of the accused, except that he had paraphrased certain later portions to avoid extreme vulgarity, and expressed willingness, if requested, to repeat precisely the vulgar language the boy used. The appellant's counsel did not accept this invitation. On cross-examination, the Captain asserted firmly that he had not embroidered or elaborated on what was confessed in any way. The appellant urges us to conclude from the testimony that the Captain's notes represent his interpretation of what appellant said, rather than what he actually said. We do not so read the record. We think the Captain testified, and the court properly could have found, as it did, that the substance of what the accused said was put down almost verbatim, and, in any event, without material omission and without elaboration. This is sufficient for the admission of an otherwise acceptable oral confession. *Edwards v. State,* 198 Md. 132, 146.

The final objection to the confession is entirely without merit. As has been shown, the *corpus delicti* was proven by the prosecuting witness and by the testimony of the appellant from the stand. This being so, the confession was not without corroboration, as appellant claims.

*Judgment affirmed, with costs.*