## GATEWOOD *v.* STATE

[No. 160, October Term, 1954.]

*Decided June 10, 1955.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*R. Palmer Ingram* and *Ernest L. Perkins,* with whom
was *Malcolm J. Coan,* on the brief, for appellant.

*Stedman Prescott, Jr., Assistant Attorney General,*
with whom were *C. Ferdinand Sybert, Attorney General,
Anselm Sodaro, State's Attorney for Baltimore City,* and

*Edwin A. Gehring, Assistant State's Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, following a party which got a bit rough, was arrested on a charge of assault on a warrant sworn out by his lady friend. The police removed from his wallet two slips of paper which they recognized as part of a lottery operation. He was indicted for violation of the lottery laws and the Criminal Court of Baltimore, sitting without a jury, found him guilty. He is appealing from the judgment and sentence which followed.

The appellant urges that the trial court erred when Sergeant McKay, an expert witness for the State, was allowed to testify as to the significance of each of the slips of paper before the slips had been offered in evidence. It is conceded that both papers were found on the appellant after a legal arrest and that Sgt. McKay is a well qualified expert witness. He testified that one of the papers, the yellow slip, contained three lottery numbers. On the paper were the numerals "1200". Following this were the numbers 454-2, 455-2 and 200-50, which he considered to be lottery numbers indicating $4.50 in play, 454, 455 and 200 being the numbers played. He said that the $4.50 was to be added to the $12.00, which he took the figure "1200" to mean, showing a total of $16.50 due from a man named Criner, whose name appeared at the bottom of the slip. He summarized his testimony as follows: "* * * in my opinion Criner played $4.50 in numbers with the defendant on that day, and he already owed him $12.00, which makes him owe the defendant now $16.50." All of this testimony came in without objection. The yellow slip was then offered in evidence and was objected to. The court did not then rule on the objection. Sgt. McKay continued his testimony without objection, saying that the second piece of paper, which had been taken from appellant's billfold, was an adding machine tape containing "Cut numbers, cut lottery numbers." He explained these to be numbers which appear to hit more often than others so that the odds

are made smaller on those numbers than on others which are paid off at the usual rate of 7-1 or 8-1, and they are usually called cut numbers. The tape contained a column of numerals and to the left of each appeared the notations 5-1, 4-1, and so forth. At the top of the tape appeared in pencil 8-1, which the witness said was the normal payoff of that particular operation. When asked the direct question of whether the tape was a lottery record, the Sergeant answered that in his opinion, it was. To the question as to what position in the lottery heirarchy that type of slip would indicate the holder to occupy, there was an objection which was sustained. After some further inconsequential testimony, the adding machine tape was offered in evidence, and objected to. The court then admitted both the yellow slip and the adding machine tape in evidence.

The appellant now argues earnestly that he was prejudiced by the testimony of the Sergeant before the exhibits were put in evidence and, indeed, by the action of the court in allowing such testimony to come in at any time. It is said that the numerals on the papers were not strange or esoteric and, so, meaningless to persons unfamiliar with lottery, and that their meaning must have been as apparent to the court as it was to Sgt. McKay. The answer to both of the appellant's contentions is in the case of *Shipley v. State,* 207 Md. 63, No. 124, this term, decided April 15, 1955. In that case, Sgt. McKay testified that numerals and letters on paper bags, which contained money, were lottery code numbers. The testimony was given without objection. To the argument that "* * * * the notations on the bags were not in the nature of an esoteric code requiring interpretation by an expert, as in *Chernock v. State,* 203 Md. 147, or lottery numbers in the usual sense, as in *King v. State,* 201 Md. 303, or heiroglyphics, as in *Nolan v. State,* 157 Md. 332, * * *", the answer in the opinion was: "This is simply a matter of degree. We are not called upon to express an opinion as to whether the notations were inadmissible because of such a character as not to call for expert opinion, since the testimony came

in without objection. We are not prepared to hold that the opinion was without probative force. The explanation of the experienced police officer as to the progress of the art and the improved business method is not incredible."

In the case before us, the only objection was to the admissibility of the slips themselves, following the explanation of their meaning by an admittedly qualified expert. There was no objection to the explanation of what they meant. This being so, the appellant must be deemed to have waived the right to object to the testimony as inadmissible. *Martin v. State,* 203 Md. 66. It is clear that inadmissible testimony that comes in without objection operates with full effectiveness and has the same probative force as if it were competent. *Martin v. State, supra; Jones v. State,* 205 Md. 528, 109 A. 2d 732. Clearly, the slips themselves, concededly taken from the appellant, were admissible after the testimony of the expert witness. It would seem, too, that even if the order of proof were wrong, the appellant was not prejudiced nor the trial judge misled. *Purviance v. State,* 185 Md. 189, 200.

The appellant took the stand on his own behalf and was given full opportunity to explain what legitimate meaning, if any, the slips of paper had. His explanation as to the numerals on the yellow slip was that they represented excursion tickets for which Criner owed him, and check numbers. He was unable to explain in any detail or with any precision what he meant. He had no explanation for the adding machine tape, saying that he did not know what the figures represented, nor could he explain why he had it in his possession. He admitted that he had been convicted of lottery violations on two occasions, and the court was not required to accept his seemingly entirely unsatisfactory explanation of the meaning of the papers, but could, as its judgment dictated it should, find that the testimony of the expert witness was convincing.

*Judgment affirmed, with costs.*