BOLLINGER ET AL. *v.* STATE
(Two Appeals in One Record)
[No. 24, October Term, 1955.]

*Decided November 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edward D. Storm,* with whom was *Edwin F. Nikirk* on the brief, for the appellants.

*David Kauffman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Samuel W. Barrick, State's Attorney for Frederick County,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here are appeals by Charles Henry Bollinger and Paul Edward Creager from judgments and sentences for arson.

The appellants, both aged nineteen years, lived on a farm in Frederick County adjoining that of Roy F. Valentine. On November 29, 1954, a fire destroyed a straw barn on the Valentine farm and on December 16, 1954, another fire destroyed the bank barn on that farm. Mr. Valentine and wife resided on the premises.

On the evening of December 16, 1954, Mr. and Mrs. Valentine, neither of whom smoke, were in their bank barn until about 6:30 P.M. The wiring in this barn had been installed by an electrician not long before and Mr. Valentine testified that "It was okay." Mr. Ralph Keilholtz, a neighbor, happened to look toward the Valentine bank barn at about 7:50 P.M. and saw a small fire "up along the barn." He further said: "At the same time I hollered back to my wife who in the meantime had gone back into the house. When I looked again it looked like no more than a small light or something with a dim light up along there, and I didn't think it any more necessary, and I left my home." Between 8:10 and 8:15 P.M. Mrs. Keilholtz testified that she looked out of her window and "saw what I thought seemed to be a ball of fire, and it must have been at the upper part of the barn. * * * I couldn't see the barn on fire. It looked like a fire on the second story of the barn." Between 8:35 and 8:40 P.M. Mr. Valentine first noticed the condition of the barn and said that it was "just about ready to explode."

The State proved that the appellants, in an automobile, came to a neighboring store, conducted by Mr. Robert R. Saylor, located about one mile across the fields and two miles by road from the scene of the fire, between 8:15 and 8:30 P.M. on December 16, 1954. Mr. Saylor's store was frequented by the appellants and other young men of the vicinity.

Appellants were indicted for arson of the straw barn on November 29th and of the bank barn on December 16th. The cases were tried together by the trial court without a jury. They were found not guilty of arson of the November 29th fire and both were found guilty of the December 16th fire. From the judgments and sentences they appeal to this Court.

At 1:30 P.M. on December 29th Bollinger made a written statement to three Maryland State Police concerning the burning of the bank barn on December 16th. No objection was made by the appellants to the introduction of this statement on the ground that it was not voluntary. Bollinger said he farmed on his father's farm, which adjoins that of Mr. Valentine. He said he set fire to the barn by using "a pint of gas under the barn door and set a match to it." Paul Creager was present with him. Bollinger threw the gasoline and Creager lit the match. This was the plan of both of them, but Bollinger claimed that Creager talked him into it. They just set fire to the barn and left. The barn contained a few pieces of machinery. Bollinger said he did this because Mr. Valentine was not friendly toward him and stayed to himself. He further stated that his father thought Mr. Valentine had accused his father of making liquor and stealing chickens. He said: "My dad wasn't man enough to do something about it, but I was." His father and mother were in Arkansas at the time of the December 16th fire. His grandfather and Mrs. Valentine's grandfather were brothers. He said the Valentines did not speak to his family because of jealousy. He also confessed to burning the straw barn on November 29th with Paul Creager when they lit a match in the straw. He said he would replace the barns.

At 3:15 P.M. on December 29th Creager also made a statement to the Maryland State Police. No objection was made that this statement was not voluntarily made. He said he was working on the Bollinger farm at the time and that on December 16th he and Bollinger set

fire to the barn. Bollinger threw the gasoline and he lit the match. They left and ran across the field and went home to the Bollinger farm. It was the "idea" of both of them to set the barn afire. It was approximately three-quarters of a mile from the Bollinger home to the Valentine barn. The barn was used for milking purposes. He never had any trouble with Mr. Valentine and is not related to the Valentines but is a cousin of the Bollingers. He also stated that both of them set fire to the barn on November 29th. On that date he simply stood at the corner while Bollinger set it afire. He said there was some trouble between Mr. Valentine and Bollinger's father because Mr. Valentine had accused him of making liquor and stealing chickens.

Trooper Brown, of the Maryland State Police, testified that he met Bollinger at the home of Reverend Bower after the December 16th fire, together with Trooper Tucker. They were told by Reverend Bower and by Bollinger that Bollinger did not set the fire. After these statements were made the telephone rang. Reverend Bower answered and talked to someone. A short time later Bollinger talked on the telephone to someone. Bollinger came back and said: "I did it." Trooper Brown's statement was corroborated by Trooper Tucker.

Appellants contend that the court erred in admitting the confessions before the State had overcome the legal presumption that the fire was not a criminal fire and before the state had proved the *corpus delicti* which they claim the State had never been able to prove. This Court held in *Weller v. State,* 150 Md. 278, 132 A. 624, which involved a prosecution for the manufacture of whiskey, that evidence of an extra-judicial confession by the traverser is not admissible "unless there then exists, or there is a proffer of proof later" of the *corpus delicti.* In *Harris v. State,* 182 Md. 27, 31 A. 2d 609, a conspiracy case, it was held that the order in which the evidence should be produced is largely a matter within the discretion of the trial court. See cases there cited. See

also *Gatewood v. State,* 207 Md. 374, 377, 114 A. 2d 619, 620; *Wigmore on Evidence,* Vol. VII, Section 2073, page 404. In the instant case the evidence of the *corpus delicti* was offered before the confessions were admitted in evidence. In fact, the confessions were the last things offered by the State. No evidence was offered by the defendants, who made motions for directed verdicts at the end of the State's case which were rejected as to the December 16th fire.

Appellants further argue that without proof of the *corpus delicti* the confessions were not admissible. It is stated in *Wharton's Criminal Law,* 12th Ed., Vol. II, Section 1063, as follows: "The burden is on the state to show that the burning was with a criminal design,— this is the *corpus delicti.* The *corpus delicti* cannot be established by proof of the burning alone, or by the naked confession of the accused. Where nothing except the burning appears, the law presumes it to have been accidental, and not by criminal design; and the state must overcome this presumption of law, and prove a criminal design beyond a reasonable doubt." Apparently there is no difference in this rule as applied to arson than in other criminal cases. It is said in 6 C.J.S., "Arson," Section 29, page 749: "In a prosecution *for arson as in other criminal cases,* it is incumbent on the State to prove the corpus delicti, and it is now recognized as the universal rule in the law of arson that in order to establish the corpus delicti, it is not only necessary that the State prove the burning of the building in question, but the evidence must also disclose that it was burned by the willful act of some person criminally responsible for his acts, and not by natural or accidental causes." (Italics supplied here). *Williams v. State,* 90 Ind. App. 667, 169 N. E. 698; *State v. Cristani,* 192 Iowa 615, 185 N. W. 111; *Stine v. Commonwealth,* 162 Va. 856, 174 S. E. 758.

There is no question that in this State an extra-judicial confession of guilt by a person accused of crime un-

corroborated by other evidence is not sufficient to warrant a conviction. *Weller v. State, supra; Markley v. State,* 173 Md. 309, 196 A. 95; *Jones v. State,* 188 Md. 263, 52 A. 2d 484. It is necessary that the jury, or the court where the case is tried without a jury, be convinced beyond a reasonable doubt of the appellant's guilt. Generally an uncorroborated confession does not establish as a matter of law the commission of crime beyond a reasonable doubt. The purpose of the rule requiring corroboration of confessions is to guard against convictions based upon untrue confessions alone. *Warszower v. United States,* 312 U. S. 342, 61 S. Ct. 603, 85 L. Ed. 876.

The case at bar was tried before the trial judges without a jury. When so tried, this Court may review upon both the law and the evidence to determine whether the evidence is sufficient to sustain the conviction but the verdict of the trial court shall not be set aside on the evidence unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses. Rule 7(c) of the Criminal Rules of Practice and Procedure; *Berry v. State,* 202 Md. 62, 95 A. 2d 319; *Cooper v. State,* 205 Md. 162, 166, 106 A. 2d 129.

It was said by this Court in *Wood v. State,* 192 Md. 643, 650, 65 A. 2d 316, and in *Davis v. State,* 202 Md. 463, 470, 97 A. 2d 303: "The character of the evidence to prove the *corpus delicti,* and its sufficiency for that purpose, depend largely upon the circumstances of each particular case. It may be stated as a general proposition that it is essential in all criminal prosecutions to prove the element that constitutes the crime. * * * However, the *corpus delicti* may be proved by circumstantial evidence when direct evidence is not available. *Jones v. State,* 188 Md. 263, 52 A. 2d 484. It is also not necessary that the evidence independent of the confession must be full and positive. *Forte v. United States,* 68 App. D. C. 111, 94 F. 2d 236, 127 A. L. R. 1120. In

addition, the evidence necessary to corroborate a confession need not establish the *corpus delicti* beyond a reasonable doubt. *It is sufficient if, when considered in connection with the confession, it satisfies the jury beyond a reasonable doubt that the crime was committed and that the defendant committed it.* As Judge Learned Hand said in *Daeche v. United States,* 2 Cir., 250 F. 566, 571, circumstances corroborating a confession need not independently establish the truth of the *corpus delicti* at all, either beyond a reasonable doubt or by a preponderance of proof, *but any such circumstances will serve which in the judge's opinion go to fortify the truth of the confession. United States v. Kertess,* 2 Cir., 139 F. 2d 923, 929." (Italics supplied here.)

Of course, proof of the *corpus delicti* in an arson case is usually a difficult matter, as the burning is almost invariably done in a most secretive manner. The prosecution usually has to depend on circumstantial evidence. *State v. Edwards,* 173 S. C. 161, 175 S. E. 277, 278. It was said in *Ercoli v. United States,* 131 F. 2d 354: "It is sufficient if there is substantial evidence of the *corpus delicti,* independent of the confession and the two together are convincing beyond a reasonable doubt." For other cases holding that evidence of the *corpus delicti* and the confession may be considered together in determining the guilt of the accused see *Jones v. State, supra; Wood v. State, supra; Davis v. State, supra; State v. Traufer,* 109 Mont. 275, 97 P. 2d 336; *Ryan v. United States,* 99 F. 2d 864; *Arthur v. State,* 19 Ala. App. 311, 97 So. 158.

Appellants contend that the evidence submitted to establish the *corpus delicti* was not sufficient and was not compatible with the confession. Evidence outside of the ·confession showing that the burning was with a criminal design is that the Valentines left the building approximately one hour and twenty minutes before Mr. Keilholtz saw the small fire along the barn and about two hours before Mr. Valentine saw the fire. Neither

Mr. nor Mrs. Valentine smoked. The barn had been recently wired by an electrician and apparently the wiring was all right. Appellants arrived in a car at the store two miles distant from the fire about twenty-five to thirty minutes after Mr. Keilholtz saw the small fire and from ten to twenty minutes after Mr. Valentine testified that the barn was ready to explode. In arson cases, evidence that the accused was seen in the vicinity of the fire, whether before or after it occurred, is always relevant. It is said in *Underhill on Criminal Evidence,* 3rd Ed., page 798, Section 564: "It is always relevant, particularly in the case of the crime of arson, which is usually committed at night and with the greatest secrecy, to show that the accused was seen in the vicinity of the burned building about the time of the fire, whether before or after it occurred." The admission of Bollinger, made voluntarily and not as a part of the confession itself, would seem to give persuasive confirmation of the truth of the confession. See also *McCormick on Evidence,* page 231. Mr. Keilholtz's description as to how he saw the fire start with a sudden blaze which died down, is compatible with the statements in the confessions that the fire was started by setting a match to gasoline.

We are of opinion that there was sufficient evidence of the *corpus delicti* to make the confessions admissible, and we cannot say that the trial judges, on the basis of that evidence considered in connection with the confessions, which were not claimed to have been made involuntarily, were clearly erroneous in finding the appellants guilty. The judgments will be affirmed.

*Judgments affirmed, with costs.*