PEOPLE *v.* BURMAN.[1]

1. INDICTMENT AND INFORMATION — ELECTION BETWEEN COUNTS — REFUSAL TO COMPEL—PROPRIETY.

On a prosecution for violation of a municipal ordinance, no injury results from a refusal to compel an election between the counts of the complaint until after the conclusion of the case, where the trial proceeded precisely as it would had the election been made at an earlier time.

2. CRIMINAL LAW—TRIAL—JOINT DEFENDANTS—SEVERANCE — DISCRETION OF COURT.

Under sections 3100 and 11956, Comp. Laws 1897, the discretion of the circuit court on appeal in refusing a severance to persons jointly complained of for violating a municipal ordinance is not reviewable.

3. BREACH OF THE PEACE—EVIDENCE—ADMISSIBILITY.

In a prosecution for violating a city ordinance prohibiting the making of noise, riot, disturbance, or improper diversion, the gist of the offense being that defendants infuriated the local public by carrying red flags through the streets in a parade, it may be shown that the general public of the city, and the citizens and travelers on the streets upon which the parade was held, regarded the red flag as an emblem of anarchy, and a danger signal to the government and all law-abiding citizens.

4. CRIMINAL LAW — TRIAL — OBJECTIONS TO EVIDENCE — SUFFICIENCY.

In a prosecution for violation of a city ordinance by inciting disturbance by parading with red flags, an objection to testimony as to how the general public of the city regarded the red flag, on the ground that such evidence was immaterial, did not raise the question whether the witnesses giving the testimony showed themselves to be qualified.

5. BREACH OF THE PEACE—INCITING DISTURBANCE—LIABILITY.

In a prosecution for violation of a city ordinance by inciting disturbance by parading with red flags, a claim by respondents that they had a right to parade with red flags, and that those who opposed them with violence, and not respondents,

---

[1] Rehearing pending.

were the wrongdoers, is untenable, where respondents knew that their course would provoke violence and disorder, since the fact that those incited to violence were wrongdoers only makes them joint wrongdoers with respondents, and in no way relieves respondents from responsibility for their share in the disturbance.

Error to Houghton; Streeter, J. Submitted June 12, 1908. (Docket No. 119.) Decided September 10, 1908.

Fahle Burman and others were convicted of violating an ordinance, and sentenced to pay a fine of $15 each. Affirmed.

*P. H. O'Brien* (*O. J. Larson*, of counsel), for appellants.

*S. L. Lawton* (*Kerr & Peterman*, of counsel), for the people.

The following complaint was made against defendants: That on the 28th day of July, A. D. 1907,

"Within the corporate limits of the city of Hancock, county of Houghton, and State of Michigan, in and on a certain street of said city, to wit, on Quincy street, one of the public thoroughfares and streets of the said city of Hancock, did then and there make, aid, abet, countenance, and assist in making a disturbance and improper diversion, to the annoyance and disturbance of citizens and travelers, by then and there aiding, abetting, countenancing, and assisting in making and exciting loud and boisterous and profane language and noises within the hearing and to the disturbance of citizens and travelers on the said street, and within the said city of Hancock; and by then and there, for the purpose of exciting a disturbance of the peace within said city, aiding, abetting, countenancing, and assisting in forming a procession to parade and carry red flags; and by aiding, abetting, countenancing, and assisting in raising up, exhibiting, and carrying red flags, to wit, 10 red flags, while marching on said street and public thoroughfare, well knowing that said procession and assembling together and marching with

said red flags would excite anger and indignation and produce fear and fright of many of the citizens and travelers upon the streets of said city of Hancock and elsewhere, and create breaches of the peace; and by then and there aiding, abetting, countenancing, and assisting in exciting the anger, indignation, and fear of the citizens and travelers on said street; and by then and there aiding, abetting, countenancing, and assisting with divers other persons in forming a procession to carry red flags, for the purpose of defying the law and government of the said city of Hancock; and by then and there aiding, abetting, countenancing, and assisting in defying and insulting the law and government of the city of Hancock, by then and there aiding, abetting, countenancing, and assisting, together with divers other persons, in creating boisterous and disorderly conduct, and boisterous and loud language, within the hearing of citizens and travelers upon the said street; and by then and there, after being duly warned by the marshal of the said city of Hancock, and requested not to carry or exhibit red flags which would cause boisterous noises, threatening or unlawful language, disturbances of the peace, and riots on the streets of said city, and well knowing that assembling together and marching upon the said street with red flags would bring together upon the said street a large crowd of people who believed that red flags are carried by anarchists or persons believing in overthrowing the established government, and defying the established law and government, in aiding, abetting, countenancing, and assisting, together with divers other persons, in marching and parading upon Quincy street carrying red flags, creating threatening and excited conduct and disturbance of the peace, causing fear and excitement of the citizens and travelers upon the said street; and by then and there aiding, abetting, countenancing, and assisting in gathering, and causing to gather, a large crowd, to wit, 1,000 people or thereabouts, upon the said Quincy street, to the interference and prevention of lawful traffic upon the said street, and to the danger of creating riots and destruction of life and property; and by then and there aiding, abetting, countenancing, and assisting, together with divers other persons, in blockading and interfering with the lawful traffic and use of said street, endangering the lives and property of citizens and travelers upon said street of the city of Hancock,

and to the annoyance and disturbance of the peace and of citizens and travelers, and to the evil example of all others in the like cause offending, contrary to and in violation of Ordinance No. Ten (10) of the ordinances of the said city of Hancock, entitled 'Police Regulations,' passed and approved on, to wit, the 9th day of March, A. D. 1898."

Ordinance No. 10 referred to in said complaint, reads as follows:

"That any person who shall make, aid, abet, countenance or assist in making any riot, noise, false alarm of fire, disturbance or improper diversion or commit any nuisance in any street or alley, or in or on any public or private property within the village to the annoyance or disturbance of citizens or travelers, shall, on conviction, be punished by a fine of not more than $20.00 or by imprisonment for a period not exceeding twenty days, or by both such fine and imprisonment, together with the costs of prosecution, in the discretion of the court."

Defendants were tried before a justice of the peace, and found guilty. They appealed to the circuit court. There the case was tried before a jury, and there, too, they were found guilty. They bring the case to this court for review. There was testimony introduced in the circuit court tending to prove every material averment in said complaint. Special attention is called to the circumstance that this testimony showed that the day before the parade occurred that defendants were advised by the city marshal not to carry red flags, because it was feared "it would cause a disturbance and riot on our streets if they did so." The testimony also showed that the defendants are socialists, and on the said 28th day of July, 1907, which was Sunday, they participated with others in a socialistic parade in the streets of the city of Houghton. Defendants introduced testimony tending to prove that among socialists the red flag is not an emblem of bloodshed and violence, but is an emblem of their order, and signifies brotherhood. They also introduced testimony tending to prove that another ordinance passed by the council of the city of Hancock forbade the carrying of

red flags in processions, that they knew of this ordi-
nance, and decided to disregard it because they had been
advised that it was invalid.

CARPENTER, J. (*after stating the facts*). When the
trial commenced, the complaint had two counts. The
second count is set forth in this opinion. The first count
merely charged that the defendants "did then and there
make, aid, abet, countenance, and assist in making a dis-
turbance, to the annoyance and disturbance of citizens
and travelers, contrary to, and in violation of, Ordinance
No. 10." Defendants' counsel asked that the people be
compelled to elect between these two counts. The trial
court reserved his decision upon this motion until the con-
clusion of the case. He then compelled the people to elect,
and they elected to proceed under the second count. It is
now contended that they were entitled to have this elec-
tion made at the beginning of the trial. It is sufficient to
say of this contention that the defendants were not in-
jured by the action of the trial judge. The trial pro-
ceeded precisely as it would had the election been made
at an earlier time.

2. The trial judge denied the application of defendants
for a separate trial. It is contended that this was error.
Section 3100, 1 Comp. Laws, provides that, on appeal
to the circuit court from a conviction for the "violation
of any ordinance," the "proceedings * * * shall be
the same as on appeal in criminal cases cognizable by jus-
tices of the peace." In the latter cases it is provided
(section 11,956, 3 Comp. Laws) that joint defendants
"shall be tried separately or jointly in the discretion of
the court." The decision of the trial judge that these de-
fendants should be tried jointly is not, therefore, open to
review in this court.

3. The people were permitted to prove—

"That the general public of the city of Hancock, the
citizens, and travelers on Quincy street [the street upon

which the defendants paraded], regarded the red flag as an emblem of anarchy and a danger signal to the government and all law-abiding citizens."

Witness Dr. J. E. Scallon testified:

"The red flag in the popular mind of the citizens of Hancock represents, practically, anarchy, whether the party calls itself socialists, anarchist-socialists, democrat-communists, or whatnot. In the popular mind they are considered Reds.

"Q. What do you mean by 'Reds?'

"A. Men organized to destroy the present forms of government by violence."

This testimony was objected to as immaterial, incompetent, and irrelevant. The counsel making this objection said "the point we make here is how the people regarded the red flag has nothing to do with it." We are asked now to say that this testimony was erroneously admitted. It is said that the testimony is immaterial. We think this objection untenable. The gist of the offense of defendants is that they infuriated the local public by carrying these flags in the parade. The existence of that sentiment was therefore a very material fact, and that was the fact which this testimony tended to prove. The point is now made that the witnesses who gave this testimony did not show themselves qualified to give it. The objection made by the counsel did not suggest, and would not naturally suggest, this point to the trial judge. Nor do we think that it was well taken if it had been clearly made.

4. It is insisted that a verdict should have been directed in defendants' favor. Their counsel urge that they had a right to parade and display the red flag, the emblem of their order, and that the ordinance prohibiting it—which ordinance defendants are not charged with violating—was invalid. That ordinance apparently was general in its nature, and forbade the display of a red flag in any parade whatever. Whether or not there might be occasions when defendants had a lawful right to parade with

a red flag—and this would be a question which would arise upon the validity of said ordinance—we are not called upon to determine, and we ought not and will not attempt to determine in this case. [The question here is not whether the defendants have in general a right to parade with a red flag. It is this: Had they such right, when they knew that the natural and inevitable consequence was to create riot and disorder? Defendants knew this red flag was hated by those to whom it was displayed, because it was believed to represent sentiments detestable to every lover of our form of government. They knew that it would excite fears and apprehension, and that by displaying it they would provoke violence and disorder. Their right to display a red flag was subordinate to the right of the public. They had no right to display it when the natural and inevitable consequence was to destroy the public peace and tranquility. It is idle to say that the public peace and tranquility was disturbed by the noise and violence, not of defendants, but of those whose sentiments they offended. When defendants deliberately and knowingly offended that sentiment, they were responsible for the consequences which followed, and which they knew would follow. It is also idle to say that these others were wrongdoers in manifesting in the manner they did their resentment at defendants' conduct. This merely proves that they and defendants were joint wrongdoers; that they, as well as defendants, violated the ordinance in question. The object of this proceeding is not to redress the grievance of these other wrongdoers, but it is to redress the grievance of the public whose rights they and defendants jointly invaded. The guilt of their associate wrongdoers does not lessen defendants' responsibility. It is sufficient to say that defendants by their conduct did "aid, countenance, and assist in making a riot, noise, and disturbance," and therefore violated Ordinance No. 10 of the city of Hancock. This reasoning is sustained by authority. Says Chief

Justice CHAMPLIN, speaking for the entire court in *People* v. *Johnson*, 86 Mich. 177 (13 L. R. A. 163):

"In general terms the offense [breach of the peace] is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence, or tending to provoke or excite others to break the peace."

See, also, *State* v. *White*, 18 R. I. 473. It does not avail defendants to say that they have a right to propagate their political views. That right is not denied. But we do deny and emphatically deny that in propagating their views they may commit a crime or violate any constitutional law or valid municipal ordinance.

Defendants rely upon the *Frazee Case*, 63 Mich. 396. There the petitioner, who had taken part in a Salvation Army parade, had violated an ordinance of which the court said:

"It left practically within the unlimited discretion of the mayor   *   *   *   the power of determining whether processions shall be allowed."

This ordinance was held void. That the reasoning of that case does not apply to this is clearly shown by the following quotations from that opinion:

"There may be times and occasions when such assemblies may for a while be dangerous in themselves because of inflammable conditions among the population.   *   *   *   It is only when political, religious, social, or other demonstrations create public disturbances or operate as nuisances, or create or manifestly threaten some tangible public or private mischief, that the law interferes. And, when it interferes, it does so because of the evil done, or apparently menaced, and not because of the sentiments or purposes of the movement, if not otherwise unlawful; and things absolutely unlawful are not made so by local authority, but by general law.   *   *   *   It is lawful to provide for dealing with the mischief, but it is not lawful to go beyond reasonable measures and precautions in anticipating it.   *   *   *   These processions might, no doubt, become nuisances, as any others might do so, but it cannot be assumed that they will."

Other complaints are made. They need no special attention. They are all answered either by an application of the principles herein stated, by other elementary principles of law, or by a proper construction of the record.

The judgment is affirmed.

Grant, C. J., and Hooker, Moore, and McAlvay, JJ., concurred.