STATE, RESPONDENT, *v.* MIHALOVICH, APPELLANT.

(No. 5,375.)

(Submitted February 5, 1924. Decided February 15, 1924.)

[222 Pac. 695.]

*Criminal Law—Rape—Evidence—Proof of Venue—Physical Examination of Prosecutrix—Time—Instructions.*

Rape—Evidence—Sufficiency.
   1.   Evidence *held* sufficient to warrant conviction of defendant for rape.

Same—Failure of Prosecutrix to Make Prompt Disclosure—Rule—When Inapplicable.
   2.   Where the prosecuting witness in a rape case was under the age of consent at the time of the commission of the offense, the rule that unless she made prompt disclosure her testimony stands discredited has no application.

Same—Venue—When Sufficiently Proven.
   3.   Where the county line was three miles in one direction and four miles in another direction from a town near which the crime of rape was committed, and three of a party of six, two of whom were the defendant and the prosecuting witness, testified variously that they drove a little ways, a couple of miles, or two miles from the town, the testimony *held* sufficient to establish the venue.

Same—Cross-examination—Proper Exclusion.
   4.   Exclusion of questions asked on cross-examination which at most called for a repetition of statements theretofore made by the same witness on cross-examination was not reversible error.

Same—Instructions—Singling Out Witness—Proper Refusal.
   5.   An instruction not applicable to the evidence and which by inference singled out the testimony of a particular witness, thus invading the province of the jury and commenting upon the weight to be given it by them, was properly refused.

Same—Physical Examination of Prosecutrix—Remoteness of Time Goes to Weight of Testimony.
   6.   Testimony of a physician concerning his physical examination of the complaining witness in a prosecution for rape, made forty-four

days after the commission of the offense, objected to as being too remote, was properly admitted, remoteness of the time of examination affecting the weight of the testimony only and not its admissibility.

Same—Malice—Revenge—Cautionary Instruction—When Improper.

7. Where in a prosecution for rape the elements of private malice or revenge on the part of the complaining witness are not made apparent by the evidence, an offered cautionary instruction that rape cases afford an opportunity for the display of both and that therefore the jury should hesitate to convict on her uncorroborated testimony, was properly refused.

*Appeal from District Court, Golden Valley County; George A. Horkan, Judge.*

PAUL J. MIHALOVICH was convicted of the crime of rape and appeals from the judgment of conviction and from the order denying him a new trial. Affirmed.

Cause submitted on briefs of counsel.

*Mr. Carl N. Thompson,* for Appellant.

The evidence not only does not show beyond a reasonable doubt that the offense, if any, was committed in the county of Golden Valley, but does not show it at all; and the court will not take judicial notice of the location of unincorporated hamlets and villages. (*Anderson* v. *Commonwealth,* 100 Va. 860, 42 S. E. 865; *State* v. *Bush,* 136 Mo. App. 608, 118 S. W. 670.) The venue was something to be proved by the state, and proof of it is as essential to conviction as any other fact. As the state relies on distance from Emory it should have called the county surveyor, or introduced his records to prove that Emory is in Golden Valley county, if such be the fact.

Deferred medical examinations in rape cases do not tend to prove the issues and confuse the jury. (*People* v. *Butler,* 55 App. Div. 361, 66 N. Y. Supp. 851; *State* v. *Evans,* 138 Mo. 116, 39 S. W. 462; *People* v. *Butler,* 55 App. Div. 361, 66 N. Y. Supp. 851.) *State* v. *Evans,* 138 Mo. 116, 39 S. W. 462, another case of statutory rape, is very much in point.

The danger of convicting of rape on the uncorroborated evidence of the alleged victim has always been recognized by

the courts, and juries should be warned. (1 Hale's Pleas of the Crown, 635; *People* v. *Ah Sing,* 51 Cal. 372; *State* v. *Goodale,* 210 Mo. 275, 109 S. W. 9; *State* v. *Tomlinson,* 11 Iowa, 401; *State* v. *Connelly,* 57 Minn. 482, 59 N. W. 479; *Conners* v. *State,* 47 Wis. 523, 2 N. W. 1143.) Special scrutiny by the jury should be urged by an instruction, and for refusing such an instruction the conviction was reversed in *Conners* v. *State,* 47 Wis. 523, 2 N. W. 1143.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, for the State.

MR. JUSTICE STARK delivered the opinion of the court.

By an information filed in the district court of Golden Valley county on September 29, 1921, the defendant, Paul J. Mihalovich, was charged with the crime of rape alleged to have been committed upon the complaining witness, Augusta Lukowski, a female under the age of eighteen years, to wit, of the age of sixteen years, which said crime was alleged to have been committed in said county on or about the thirteenth day of August, 1921. To this information the defendant pleaded not guilty. Afterwards, on October 17, 1922, trial was had which resulted in a verdict of guilty being returned by the jury. Defendant was sentenced to serve not less than two years nor more than four years in the state prison. His motion for a new trial was overruled, and from the order overruling the same and from the judgment defendant appeals.

Counsel for defendant makes six specifications of error in his brief, the first of which is: "The Court erred in refusing to grant a new trial on the ground that the verdict rendered in this case is contrary to the law and the evidence," and in that connection argues that the story of the complaining witness was unworthy of belief and manifestly fabricated, because she made no prompt outcry, and because it is wholly uncorroborated and contradicted in vital parts by the other wit-

nesses called by the state. This makes it necessary to briefly state the facts developed in the testimony given at the trial.

Augusta Lukowski testified that she was born on January [1] 26, 1907, and was not the wife of the defendant. On the night of August 13, 1921, a party composed of herself, the defendant, as her escort, and others whom, for the sake of brevity, we will designate as Dolf G., Mary Z., Mary P., Johnnie S. and Jackie T., drove from Roundup to Emory, in defendant's car, to attend a dance. On the way defendant told Augusta he was a married man. When the party reached the dance-hall, all except defendant and Augusta went in and danced. They stayed outside, in the car, because, as Augusta said, she "didn't want to go out with any married man." After a while, about 11:30, one Bud H. together with Dolf G., Mary Z. and Mary P. came from the dance-hall and got into the car with defendant and Augusta. The six then started for a ride, defendant driving. After proceeding about a mile and a half or two miles in a north and northwesterly direction, defendant stopped his car and all except himself and Augusta got out, near a haystack, saying they were going to walk back to the hall. Defendant and Augusta drove on "a little ways," and after they "got down the hill a ways from the others," defendant stopped the car, took Augusta by the hand, told her to get out, and after she had done so, accomplished an act of sexual intercourse with her. Then they got into the car, drove back to the point where the others had gotten out, found that these had lingered near the haystack instead of walking back to the dance-hall, picked them up and returned to the dance. After remaining there for a short time the whole party got into the car and started on the return journey.

There is much of detail in Augusta's account of the particular event under investigation as well as of the incidents of the wild night ride home, with its accompaniment of punctured tubes and the members of the party disporting themselves like elves and nymphs in the starlight upon stacks of new-mown hay located at convenient distances along the way-

side until the joy ride was terminated by arrival at destination about 10 o'clock on the following morning, which it is not necessary to here write down.

Mary P. and Dolf G., called as witnesses for the state, each told of the ride from Roundup to Emory, and of the drive from the dance-hall to the haystack where the four got out of the car, that defendant and Augusta then drove on and returned in about half an hour, corroborating Augusta's testimony in these respects.

If it were material for the prosecution to avoid having her [2] stand discredited as a witness, to show that Augusta made a "prompt outcry" after the commission of the offense upon her, which it is not, since she was under the age of consent (*State* v. *Peres,* 27 Mont. 358, 71 Pac. 162), still upon this point there was a conflict in the testimony. She said that when she and defendant returned to the haystack where they picked up the other four members of the party she told them that defendant had "got the best" of her, that they did not say anything, but "just laughed." Mary P. did not remember that Augusta said anything at that time, but that she looked "kind of sad." Dolf G., the only other witness interrogated upon that point, testified that nothing was said at that time, but that "everybody seemed to be happy and jovial." It is uncontradicted that immediately upon her return home the following morning Augusta told her brother-in-law what defendant had done.

The only other point upon which counsel claims that Augusta's testimony was contradicted by the state's witnesses is as to whether she was dressed in a taffeta silk dress, silk hose and oxfords, or wore a gingham apron and bedroom slippers, and this was clearly not vital.

Considering the whole case, it appears to us that there is ample testimony to sustain the conviction.

By the second assignment of error counsel says that there [3] was no sufficient proof to show that the offense was committed in Golden Valley county. Witness Maris, county at-

torney of Musselshell county, testified that Emory is in Golden Valley county at a point about three miles south of the north line and four miles west of the east line of the county. As above related, Augusta said that the whole trip from Emory to the place where the crime was committed was about a mile and a half. At another place she said it was when they had gone about a mile and a half that the other parties got out of the car, and that she and defendant then drove "a little ways," or as she stated in another place, "when we got down the hill a little ways from the others" defendant stopped the car and they got out and it was then the crime was committed, and that the town of Emory was "a little ways from there." Mary P. said they drove two miles northwest of Emory, and Dolf G. said they drove "a couple of miles" to the place where he and the others got out. In view of the fact that it would have been necessary for the defendant to drive three miles directly north or four miles directly east from Emory to take him outside of Golden Valley county, we think the above testimony established the fact that the offense was committed in that county.

Assignment of error III relates to the ruling of the court [4] in sustaining an objection to a question asked of a witness on cross-examination. The record discloses that the question asked would at most have called for a repetition of statements theretofore given on the cross-examination of the same witness, and the court was right in sustaining the objection.

Refusal of the court to give defendant's requested instruction [5] No. 5 is assigned as error in specification IV. The court was right in declining to give this instruction. It was not applicable to the evidence in the case. In effect it was an argument upon an abstract proposition of law. By inference it singled out the testimony of one witness and invaded the province of the jury by commenting upon the weight which should be given to it.

Over the objection of defendant that his testimony was too [6] remote in time to be material to the issues in the case,

Dr. Baird was permitted to testify concerning the physical condition of the complaining witness when he made an examination of her on September 26, 1921, or one month and thirteen days after the commission of the offense. Remoteness of the time of examination affects only the weight of the testimony and not its admissibility. In *People* v. *Benc,* 130 Cal. 159, 62 Pac. 404, the court said in reference to a similar situation: ''Dr. Rosson testified to the condition in which he found the sexual organs of the prosecutrix some four or five days after the alleged rape. Defendant objected as immaterial and incompetent and not part of the *res gestae.* The evidence was admissible. It has been held that the condition of the hymen six months after the alleged rape may be shown, the remoteness of the evidence going merely to its probative force. (*Gifford* v. *People,* 148 Ill. 173, 35 N. E. 754.) The jury were the judges of its probative force.'' And the same rule was held to apply in *Lyles* v. *United States,* 20 App. D. C. 559 (four weeks); *Commonwealth* v. *Allen,* 135 Pa. St. 483, 19 Atl. 957 (a year and a half); *State* v. *Teipner,* 36 Minn. 535, 32 N. W. 678 (twelve days); *State* v. *King,* 117 Iowa, 484, 91 N. W. 768 (six weeks).

The court refused to give defendant's offered instruction [7] No. 8, and this refusal is made the basis of his last specification of error. An identical instruction was considered and discussed by this court in the case of *State* v. *Keeler,* 52 Mont. 205, Ann. Cas. 1917E, 619, L. R. A. 1916E, 472, 156 Pac. 1080, wherein the court doubted its propriety in any case, and held there was nothing in the record to warrant the suggestion that private malice or revenge were at all involved. The same may be said of this case. There is absolutely nothing in the record to even suggest malice and revenge. There was no error in refusing to give this instruction.

After a painstaking examination of the entire record in this case we are convinced that the defendant had a fair and impartial trial, and that the verdict is fully sustained by the evidence.

The judgment and order of the district court of Golden Valley county are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.

Rehearing denied March 5, 1924.