THE STATE OF MONTANA, Plaintiff and Respondent, v.
VERNON BOE, Defendant and Appellant.
No. 10576
Submitted October 9, 1963. Decided December 20, 1963.
388 P.2d 372.

Jess L. Angstman (argued), Havre, for appellant.

Dola N. Wilson, Jr. (argued), Fort Benton, Forrest H. Anderson, Atty. Gen., and James Sinclair, Asst. Atty. Gen. (argued), Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment of conviction of the

crime of rape, and from an order denying defendant's motion for a new trial.

On March 13, 1962, the county attorney of Chouteau County filed a multiple count information charging the defendant, hereinafter referred to as appellant, with the crime of rape, in that he wilfully, wrongfully, unlawfully, and feloniously accomplished an act of sexual intercourse with a female child under the age of eighteen year, to-wit, fifteen years. Twenty-two separate acts were charged covering the period from November 20, 1961, to March 3, 1962. The appellant was convicted on nine of the counts and sentenced to the state prison for five years for each offense, the sentences to run consecutively.

The appellant was and is the brother-in-law of the girl involved. According to her testimony she became infatuated with him; that he encouraged her, and that she finally began leaving the window in her basement bedroom open so that he could enter from the outside. Appellant had a trailer in the yard of the family which was used when his family was in town, but for most of the period involved he was working some fifty miles away.

Big Sandy, the small town the child's family lived in, is some thirty miles from the county seat of Fort Benton. A deputy sheriff, who is also town marshal, provides for the law enforcement, and it was to him that reports were first made that appellant's car was being left all night in various places other than his residence. These complaints were made in the latter part of November or early in December of 1961 for the deputy sheriff began to keep nocturnal calendar on appellant's visits on December 15, 1961. The child involved testified that appellant had made previous visits commencing in late August of the same year. Commencing on December 15, 1961, to March 3, 1962, the deputy sheriff testified that he either saw him go over to the basement window of the girl's house or trailed him from where his car was parked to the window some twenty times; that the appellant's usual custom was to park the car

around midnight in the neighborhood and return to the car around 6:00 A.M. The deputy sheriff reported these goings on to his immediate superior and was told by both the sheriff and county attorney to continue his investigations and report same to the office of the sheriff. On or about March 5, 1962, the county attorney and the deputy sheriff confronted the girl's mother with the facts of the investigation. The mother talked to the girl, learning from her, for the first time, of what had taken place between the girl and the appellant. The girl was taken to Fort Benton that afternoon where she was examined by a local doctor and found to be pregnant. After the medical examination, the girl went to the office of the county attorney where she gave a statement to the county attorney. When questioned at the time of the trial, and confronted with the calendar investigation dates made by the deputy sheriff, she admitted that each time the appellant visited her bedroom via the window that an act of sexual intercourse occurred.

The appellant sets forth ten specifications of error in his brief. These can be briefed into four major arguments:

(1) That the verdict is contrary to law, facts and evidence;

(2) Court erred in refusing to grant motion to elect;

(3) Court erred in refusing to sustain appellant's objection to testimony as to date of birth of defendant's oldest child;

(4) Court erred in refusing to give appellant's proposed instructions 2, 4, 5, 6, and in failing to strike certain words in the State's proposed instructions 35-A.

Concerning appellant's first major argument that the verdict is contrary to the law, facts and evidence, we find no merit. A careful review of the evidence presented and considered by the jury leaves some question as to why they failed to convict on all twenty-two separate counts, for the testimony presented to the jury on each count was practically identical. However, that was a matter for the jury's consideration, and the fact they found appellant not guilty on thirteen counts shows ample consideration by them of his case. What seems

to be the crux of appellant's case is after some ninety years of territorial and state law the Legislature in 1961 changed our statute, section 94-6407, R.C.M.1947, which prohibited the charging of more than one offense, to our new procedure of allowing multiple counts, section 94-6407.1, R.C.M.1947, which provides:

*"Pleadings charging more than one offense—consolidation or separation for trial.* An indictment, information, complaint or accusation may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments, informations, complaints or accusations are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the indictment, information, complaint or accusation, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which the case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the indictment, information, complaint and accusation be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

While this is new to the state criminal procedure it has been followed in the federal criminal procedure, so it is not unknown to our practice. Too, during most of the period known as the "prohibition era" this state allowed in liquor offenses, the uniting of separate offenses in separate counts. Section 11078, R.C.M.1921, repealed in 1927.

The power of the Legislature to make provision for the uniting of separate offenses in separate counts is absolute, provided no constitutional restriction or guaranty is violated.

This right, within our constitutional limitations, to enact a criminal code and to make such changes thereto from time to time which the Legislature shall deem expedient for the protection of private rights and the prevention and punishment of public wrongs lies within the discretionary powers of our Legislature. The question of procedure for the prosecution and conviction of one accused of crime is solely a legislative function with which the judiciary will not interfere so long as a constitutional right or guaranty is not violated.

■ It is a well-known rule of construction that where a new remedy, or mode of procedure is authorized by a new statute, and the new rule is inconsistent with the former one, that the latest expression of the Legislature will govern.

■ We are therefore faced with the consideration of constitutional prohibitions, federal or state, which prohibit the charging of two or more different offenses connected together in their commission, or different offenses of the same class of crimes or offenses, under separate counts. The Montana constitutional guaranty follows that of the United States Constitution, Amend. XX, § 5, which is that "No person shall * * * be twice put in jeopardy for the same offense." (Sec. 18, Art. III, Mont.Const.) The controlling word is offenses, it does not refer to acts, which, by statute, are made one or more separate offenses. The test of "former jeopardy" is whether a verdict of either acquittal or conviction of one or more of the offenses could be imposed as a bar to a prosecution for any of the other offenses charged therein. In this case, where the separate acts are set forth as required by statute, clearly each is a separate offense and acquittal or conviction on one or more counts does not affect any of the other. See Ashe v. United States ex rel. Valotta, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662; People v. Kelly, 203 Cal. 128, 263 P. 226; People v. Grossman, 28 Cal.App.2d 193, 82 P.2d 76; People v. Chessman, 52 Cal.2d 467, 341 P.2d 679; State v. Brunn, 145 Wash. 435, 260 P. 990; People v. Brownstein, 21 Misc.2d 717, 197 N.Y.S.2d 755; United

States v. Abrams, (D.C.N.Y.1961) 29 F.R.D. 178; Anno.: 114 A.L.R. 1406; 27 Am.Jur., Indictments and Informations, p. 687.

It should be noted that this court in two recent cases, State v. Bogue, 142 Mont. 459, 384 P.2d 749, and State v. Moran, 142 Mont. 423, 384 P.2d 777, considered this problem under the new multiple count statute and approved the procedure. In State v. Bogue, supra, we said on approving the consolidated information: "It is clear that such allegations would enable a person of common understanding to know what is intended. Therefore, the requirements set forth in section 94-6403, subd. (2), are satisfied."

In the Chessman case, supra, 17 counts were charged and the judgment was affirmed; In People v. Brownstein, supra, a 251 count indictment was sustained; and in United States v. Abrams, supra, an indictment of 103 counts was sustained.

■ From the above-cited cases and texts we hold that each charge set forth in the information was properly joined in a separate count and that there is no violation of any state or federal constitutional guaranty.

■ Concerning appellant's second major argument of error in the court's refusal to grant his motion to compel the state to elect, we find no merit. Our statute, section 94-6407.1, supra, is a discretionary statute. The trial judge may in his discretion order that the different offenses or counts set forth in the indictment or information be tried separately, or divided into two or more groups and of said groups tried separately, but in this case he did not so order nor is there any proof offered of any abuse of discretion on the court's order. This type of statutory provision has been upheld in numerous jurisdictions and is clearly one of legislative discretionary powers, in changing criminal procedure. See Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208; People v. Burman, 154 Mich. 150, 117 N.W. 589, 25 L.R.A.,N.S., 251; State v. Neff, 169 Kan.

116, 218 P.2d 248; State v. Brewer, 56 N.M. 226, 242 P.2d 996; 27 Am.Jur., Indictments and Informations, p. 692.

■ Appellant alleges that the court erred in refusing his proposed instruction No. 2 which reads as follows: "The jury is instructed that if the evidence can be reconciled with either the theory of innocence or the theory of guilt, the law requires that the theory of innocence be adopted." In the court's refusal to give this instruction we find no error. The instruction is repetitious of at least three given instructions on presumption of innocence and therefore within the court's discretionary power to give or refuse.

The appellant sets forth two proposed instructions, the refusal of which he alleges is reversible error. They are as follows:

"4. You are instructed that the charge of rape is likely to create a strong prejudice against the accused. It is a charge easy to make and hard to disprove. Thus you should bear in mind this difficulty of defending against such a charge and consider carefully all the evidence and instructions of the court."

"5. The court has instructed the jury that from the peculiar character of rape, care should be used by them in considering the evidence for the prosecution. The female claiming injury is a competent witness in such cases, but the degree of credit to be given to her testimony depends more or less upon the concurrence of the circumstances and facts proved at the trial in support of her testimony."

■■ To the court's refusal to give the above instructions we find no error. While the giving of such instructions has been held proper by this court we clearly held in State v. Stevens, 119 Mont. 169, 172 P.2d 299, that failure to give such precautionary instructions was not error. See also State v. Gaimos, 53 Mont. 118, 162 P. 596; State v. Keeler, 52 Mont. 205, 156 P. 1080, L.R.A.1916E, 472; State v. Mihalovich, 69

Mont. 579, 222 P. 695; State v. Peterson, 102 Mont. 495, 59 P.2d 61.

Concerning specification 5, the court's refusal to sustain the objection to the testimony of the date of birth of defendant's oldest child, we find no error. The defendant took the stand and denied any relations with his sister-in-law, testified that he was 33 years of age; that he was happily married to a beautiful woman, and that they were the proud parents of three handsome children, two girls and a boy. On cross-examination the following questions and answers took place:

"Q. You say Mildred never appealed to you? A. No.

"Q. Did you ever kiss her? A. No, I did not.

"Q. How old was your wife when you were married? A. I don't exactly remember.

"Q. Is it true she was seventeen years of age? A. I believe seventeen, yes.

"Q. What is the date of birth of your oldest child?

"Mr. Angstman: That is objected to as immaterial and irrelevant.

"The Court: Overruled.

"Witness: February 11, 1957.

"Mr. Wilson: What was the date of your marriage to Wanda? A. May 6th of the same year."

In setting forth this objection without citation of authorities as to why the testimony was prejudicial, the appellant fails to sustain his burden of showing prejudice. Error will not be presumed nor will a criminal case be reversed for errors or defects appearing in the record which do not affect the substantial rights of the defendant. See State v. Gransberry, 140 Mont. 70, 367 P.2d 766; State v. Dixson, 80 Mont. 181, 260 P. 138.

Concerning court's refusal to give appellant's proposed instruction 6:

"The essential guilt of rape consists in the outrage to the person and feelings of the female. Any sexual penetration,

however slight, is sufficient to complete the crime, and in this case, if you find the defendant guilty, it will be necessary for you to first find that there was penetration of the private parts of the complainant." To the refusal to give the instruction we find no error. To have given this instruction would have been repetitious for the contents are adequately covered in court's instructions 8, 9 and 11.

Appellant's last specification of error alleges the court erred in overruling appellant's objection to certain words contained in what became court's instruction 9.

"Any sexual penetration, however slight, is sufficient to complete the crime of rape if the other requisite facts are present."

▆▆▆ Other than the objection as stated, appellant gives no reason nor does he give any authority why it is an improper instruction. Having failed to cite authority to support his allegations of error we are not called upon to answer. State v. Dixson, 80 Mont. 181, 260 P. 138; State v. Gransberry, 140 Mont. 70, 367 P.2d 766.

Finding no prejudicial error the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE DOYLE, dissenting:

I dissent.

The writer of this dissent has no compunction or reluctance in acquiescing to a judgment of conviction where the defendant has received a fair trial, with all of his inherent constitutional rights protected, the evidence of the crime clear and convincing that the defendant is guilty beyond a reasonable doubt and to a moral certainty, with a jury of his layman peers returning a verdict of "guilty." However, I feel a moral responsibility to dissent where the record discloses speculative, conjectural testimony on seven counts leading to convictions on evidence not given by the complainant but by a third person, whose sworn

duty was to prevent the alleged offenses rather than render assistance to the perpetration of them.

The law is well-established that it is the duty of every good citizen to help the criminally minded to remain law-abiding. On the other hand, when a private citizen or an officer is cognizant of intended violation of the law, *it is his duty* to use all legitimate means to *prevent* commission of the offense and to apprehend the offender.

The record is also clear that the defendant made entrance into this home, not owned by the complaining witness through a basement window. It should be apparent to anyone of average intelligence that the defendant was not entering this basement window at 11:00 p.m. for the purpose of playing pinochle, or parcheesi.

One of the reasons for this dissent is predicated upon a prior holding by this court being the case of State v. Nelson, 139 Mont. 180, 362 P.2d 224, which opinion was authored by Mr. Justice John C. Harrison, the author of the majority opinion here.

In the Nelson case, supra, reference is made to section 94-6003, R.C.M.1947, which provides: "A peace officer may make an arrest in obedience to a warrant delivered to him, or may, *without a warrant,* arrest a person—

"1. *For a public offense committed or attempted in his presence;*

"2. When a person arrested has committed a felony, although not in his presence;

"3. *When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it;*

"4. On a charge made, upon reasonable cause, of the commission of a felony by the party arrested;

"5. *At night, when there is reasonable cause to believe that he has committed a felony."* Emphasis supplied.

152

The record discloses that the Deputy Sheriff, Paul Williams, testified as follows:

"Q. On December 18, 1961, what did your investigation show? A. Pretty much the same December 18, car there at 11:30 p.m. and I seen him this time leave the vehicle; I sat back in the driveway of Mrs. Peterson's after I noticed the vehicle immediately parked over there and was seen going in there at 11:30."

Contemplating this simple question and pregnant answer it was the express duty of Deputy Sheriff, Paul Williams, to forthwith arrest the defendant for the crime of burglary as defined in section 94-901, R.C.M.1947, as follows:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

Supporting this premise is the case of State v. Board, 135 Mont. 139, 337 P.2d 924, wherein this court said that in a prosecution for burglary in the first degree, an instruction which did not tell the jury that no specific intent need be proved, but at most merely told the jury that an express intention need not be proved was not erroneous on the ground that burglary requires specific intent to commit larceny or any felony and that the first part of the instruction was based on the presumption of intent and the last part indicated the express intention need not be proved.

To even the most casual legal neophyte, the witness Williams saw a first degree burglary committed in his presence at nighttime, and it was his duty then and there to arrest the defendant. This he failed to do, but on the contrary, permitted, as he testified, this defendant to commit nineteen alleged further acts of statutory rape under his observation which subsequently resulted in the defendant being convicted of seven counts of statutory rape subsequent to December 18, 1961.

The second reason for dissent is the shifting, contradictory, uncertain testimony of the complaining witness. She was asked these questions and made these answers on cross-examination.

"Q. You were brought down to Fort Benton to the county attorney's office the 5th of March, 1962, were you not? A. Yes.

"Q. Did you make a statement at that time? A. Yes.

"Q. You were upset, of course? A. Yes.

"Q. Did you at that time give all these dates to the county attorney? A. *They already had them.*

"Q. They already had them? A. Yes.

"Q. Did they tell you where you got them? A. *From Paul Williams.*

"Q. From Paul Williams? A. I guess so. * * *

"Q. That's the information filed in this court, the county attorney informs the court that's the day you and Mr. Boe had sexual intercourse, do you know whether or not that is the date? A. Not for sure.

"Q. What about the 18th of December, 1961? A. I am not sure of any of those dates.

"Q. You do not know for sure if you had intercourse the 22nd of December, do you? A. No.

"Q. Nor do you have a real knowledge of the 23rd of December? A. I don't look at calendars that often.

"Q. Then you were not sure about the 30th day of December are you? A. No.

"Q. As a matter of fact you do not know what the dates are? A. *No, except for November the 20th and March the 3rd.*

"Q. Except for November the 20th and March the 3rd? A. Yes." Emphasis supplied.

If the authorities of Chouteau County had continued this "cat and mouse" procedure until the complaining witness was one day short of 18 years of age, striking an average from the transcript of the defendant's biological urge to engage in unlawful sexual relations with the complaining witness, he could

154

have received 36,531 years in prison if the trial judge elected to impose the maximum penalty on each count with a conviction on each count.

The jury was apparently dubious of the authenticity of the twenty-two alleged counts of statutory rape, in that they elected to believe nine of the charges, resulting in a sentence of forty-five years or five years for each count and a percentage of 40.9 of the twenty-two counts submitted to the jury.

Conceded that the foregoing hypothetical statement of fact soars into orbit of the thin rarefied air of speculation and improbability, becoming a star of legal lesser magnitude, the instant cause and resultant convictions will become a companion astral body of this premise, forever visible in the sky of Montana jurisprudence.

The able and competent defense counsel herein was confronted with a situation that rendered his best efforts impossible. A lawyer cannot adequately defend, where as here, the twenty-two dates of the alleged crimes were furnished by a deputy sheriff, rather than by the aggrieved complainant. In the final review of this weird contradictory record in its entirety, substantial justice could be done on behalf of society, the people of Montana, and the defendant, by reducing the penal term of the defendant from forty-five years to ten years. Such a sentence is compatible with the two acts that the complaining witness was positive had occurred.