MR. JUSTICE SHEEHY
delivered the opinion of the Court.
Defendant John L. Price appeals from a judgment of the Gallatin County District Court, entered after a nonjury trial, convicting him of two felony counts of sexual assault and one misdemeanor count of obscenity.
In attacking the sexual assault convictions, defendant asserts insufficiency of the evidence to sustain these convictions, but also contends that assuming the sufficiency of the evidence, the case must be reversed because the trial court did not set forth the legal standard of consent whereby it determined that the .sexual touching was without the boy’s consent. Defendant also argues that his convictions of sexual assault must be reversed because testimony of a psychiatrist concerning defendant’s admissions to the sexual touchings constituted a violation of the patient-physician privilege. In attacking the misdemeanor obscenity conviction, defendant contends that the State failed to comply with section 45-8-201, MCA, in that the State failed to admit evidence at trial which would give the trial court a basis upon which to determine contemporary community standards and whether the conduct appealed to a prurient interest in sex. His last contention is that he was denied due process of law at the sentencing hearing because the State surprised him with the testimony of two women who stated that at least 11 years before, while they were young girls, the defendant touched them in a sexual manner.
We conclude that the evidence is sufficient to uphold both convictions of sexual assault. We reverse and dismiss the misdemeanor conviction of obscenity because the State failed to introduce evidence of contemporary community standards, or evidence that the conduct involved appealed to a prurient interest in sex. This re *4 quirement is a statutory one in this state, and the failure of the State to meet this requirement left the trial judge without an evidentiary basis to determine this issue.
The question as to the admissibility of the psychiatrist’s testimony is one that defendant cannot really complain about in this appeal, because he first sought and obtained admission of medical reports containing defendant’s admissions that he touched the boy. Defendant did not, furthermore, object to the admission of this testimony at trial, and thus, he has waived his right to predicate error upon its admission.
The criminal charges involved arose out of incidents which took place in a swimming pool at Bozeman Hot Springs. The Hot Springs is a privately owned and operated camping and recreation resort. The complex includes a public indoor hot springs mineral swimming pool. Swimmers are required to wear proper swimsuits and remain properly covered. The incidents took place in November and December 1978, while Chris, a ten-year-old boy, and his nine-year-old sister, Nicole, were staying with their parents at the KOA Campground, which is adjacent to the Hot Springs. Chris and Nicole frequently played on the grounds surrounding the Hot Springs and regularly swam in the pool.
The first incident which later gave rise to a charge of sexual assault and a charge of obscenity took place at the swimming pool in November 1978. While Chris and Nicole were swimming, they noticed the defendant, a 65-year-old man, exposing himself. The defendant then approached Chris and struck up a conversation. While doing so he placed his hand down the front of Chris’s swimsuit and touched the boy’s private parts. Chris was angered and moved away from the defendant. Nicole observed this incident.
The next incident, but one which did not lead to a criminal charge, took place on December 11, 1978, when Chris, Nicole and their little brother were riding bicycles around the Hot Springs complex, when they noticed the defendant in his car. He asked the children to go to his car and listen to music, but they declined. While the children were leaving, however, the defendant again *5 touched Chris on the outside of his clothing in the genital area. Chris rode his bicycle home and reported the incident to his mother. His parents notified law enforcement officials.
The last incident, which led to another charge of sexual assault, took place on December 17, 1978, when Chris, at the suggestion of law enforcement officials, was used to lure the defendant into another act of sexual touching. The deputies, with the consent of the parents, asked Chris to go to the Hot Springs pool and instructed him how to conduct himself at the pool. Chris was specifically instructed “not to go towards the defendant or say anything to him, beckon to him or call to him.”
Chris then went into the swimming pool and the deputies went to prearranged observation stations at the pool. While Chris was swimming, the defendant came over to him and started a conversation. Chris continued to swim. Moments later, while Chris was upside down in the pool walking on his hands, the defendant grabbed Chris’s legs and set him rightside up. Defendant then placed his hand down in front of Chris’s swimsuit and touched his private parts. Chris was angered and moved away. Chris then saw his father standing along the pool, and he immediately got out of the pool.
As a result of these episodes, defendant was charged with two counts of sexual assault and one count of obscenity. During the trial the psychiatrist who had examined the defendant testified that defendant had admitted to him that he had touched the boy in a sexual way. Defense counsel did not object to this testimony. The prosecution also introduced into evidence, without objection from defendant, a report from the same psychiatrist which contained statements by the defendant that he had touched the boy in a sexual way. The defendant did not testify.
On September 13, 1979, the trial court entered its findings, conclusions and judgment and found defendant guilty of all three charges. The court also ordered a presentence investigation and report and set the sentencing for September 24, 1979. Defendant was sentenced to six months in the county jail for obscenity and he *6 was sentenced to ten years in the Montana State Prison on each of the two felony counts of sexual assault, with six years suspended on each count. The sentences were to run concurrently. The trial court also ruled that defendant was a nondangerous offender. This appeal followed.
THE CONSENT ISSUE
With relation to defendant’s argument that the State failed to prove the boy did not consent to the sexual touching, we must preface our analysis with a brief statement of the existing statutory law applying to the issue of consent where the charge is sexual assault. Defendant was convicted of violating section 45-5-502, MCA. Neither this statute nor any other applicable statute, provided that consent is ineffective if the victim is under a certain age. (Although not applicable here, this statute has since been amended to provide that consent cannot be given if the victim is less than 14 years old. See section 45-5-502(5), MCA.) Because of this legislative omission, defendant contends that the State must prove lack of consent regardless of the age of the victim.
We are faced with two anomalies. First, we must analyze the evidence to determine whether the evidence was sufficient to establish that the boy did not consent to the sexual touching. Obviously, if the evidence was insufficient, the trial court’s decision must be reversed and the charges ordered dismissed. Assuming that the evidence is sufficient (and we so find), we are confronted by a bare bones set of findings and conclusions, from which it is not apparent the precise legal basis upon which the trial court decided the issue of consent. The defendant argues that the failure to set forth in the conclusions, the legal theory upon which the consent was found, necessitates a reversal.
First, to an analysis of the evidence. The consent issue is raised here because the State failed to ask a direct question of the boy — as to whether he consented to the contacts. Our job here, however, is first to determine whether there is sufficient evidence in the record from which the trial court could determine that the boy did not consent, even though the legal basis for such conclusion was not set forth.
*7 After the first sexual touching in November 1978, the boy was angered and moved away from the defendant. The boy testified that after this incident, he stayed away from the Hot Springs swimming pool because he did not wish to be near the defendant. Another sexual touching occurred when the defendant asked the young boy and his sister and brother to get into the car with him and listen to music. Indeed, it was this sexual touching which prompted the boy to tell his parents. The third sexual touching took place in a situation where the boy was instructed to get in the swimming pool, and where the conduct of the defendant and the boy was observed. The boy was specifically instructed not to do anything to entice the defendant towards him. The record is barren of any evidence that the boy enticed the defendant to be near him or that when he did come near, that he consented to any touching at all. Indeed, the boy was walking on his hands in the swimming pool when the defendant grabbed him and turned him rightside up. Almost immediately, the defendant then shoved his hand inside the boy’s swimming trunks and touched him. The boy pulled away in anger and got out of the defendant’s reach. This episode was observed by two police officers who were stationed there to specifically observe the conduct, primarily of the defendant, but also that of the boy.
Defendant contends that this evidence fails to lay a basis for a legally sufficient conclusion that the boy did not consent to the sexual touching on each of the occasions involved. Defendant contends that only direct evidence from the mouth of the boy that he did not consent could establish that he did not consent to the sexual touchings. But this argument ignores the reality of a small boy being confronted by an adult under embarrassing circumstances. Undoubtedly, the consent .issue would have presented a cleaner case if the boy had uttered the magic words in front of the trial judge that he did not consent to the sexual touchings, but this failure does not render the evidence insufficient. There is absolutely nothing in the record to indicate that the boy permitted the sexual touchings to occur. Indeed, as is so often the case in situations such as this, the events took place so fast that there was hardly time for a young boy *8 (or anyone, for that matter) to have advance warning of what was about to take place. On both occasions involved, the boy was angered and moved away from the defendant. This hardly demonstrates that the boy approved of such conduct. The fact that the boy reported an intervening incident to his parent is indicative, albeit circumstantially, of a lack of consent. The failure of the boy to utter the magic words does not ipso facto establish the insufficiency of the evidence.
Our task here, however, does not end with a holding that the evidence is sufficient for sustaining a finding of guilt. We are left with a sufficient evidentiary record and with no precise basis of determining how the trial court reached its decision.
The sexual assault statute, which contains the consent requirement at issue here, section 45-5-502(1), MCA, reads as follows:
“A person who knowingly subjects another not his spouse to any sexual contact without consent commits the offense of sexual assault.” (Emphasis added.)
It is clear that one of the elements the State must prove is that the sexual touching took place “without consent” of the victim. It is equally clear that every element of a crime must be proved beyond a reasonable doubt. In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368.
At the conclusion of the trial, defendant moved the trial court to dismiss the assault charges or to grant a directed verdict on the ground that the State failed to prove lack of consent to the sexual touching. The State asked the trial court to open up the trial to permit additional evidence on the consent issue. The trial court took this motion under advisement and ultimately denied it. Briefs were then filed by both sides on the issue of consent. The State defended the consent issue on three grounds: First, that circumstantial evidence was sufficient to reach a conclusion that the State proved lack of consent; second, that sections 45-5-501 and 45-5-503, MCA, which provide that a victim under the age of 16 is incapable of consenting to an act of sexual intercourse, should also apply to the sexual assault charges filed under section 45-5-502; and third, *9 that general definitional and case law dictate an application of the common law rule that someone 10 years old or younger is incapable of legally consenting to anything.
In this appeal, the State concedes the inapplicability of either of its arguments with relation to inability to consent as a matter of law. The State thus concentrates on its first approach: that the circumstantial evidence existing is sufficient to prove the lack of consent. We agree with this assessment. However, the findings and conclusions entered by the trial court do not tell us on what legal basis the trial court determined the issue of consent. Did the trial court determine as a matter of evidence only that the State had proved lack of consent? Or did the trial court determine that the young boy was, as a matter of law, incapable of giving consent by either of the two theories advanced by the State?
With relation to the first charge of sexual assault, the pertinent finding (No. 9) provides:
“The old man also asked Chris if he liked hot water. Christopher replied that he did. The old man then asked him ‘Does it give you a hard on?” Chris said, ‘What?’ and then the old man stuck his hand down Chris’ swimming suit and felt his ‘privates’. Chris pulled away from the old man and felt mad.” (Emphasis added.)
The conclusion of law with relation to the issue of consent (No. 6) states:
“That on or about the 19th day of November, 1978, the defendant, John L. Price, age 65, subjected Chris, a child of ten, not his spouse, to sexual contact without consent.” (Emphasis added.)
The findings and conclusions with relation to the second assault charge similarly fail to reveal the legal basis upon which the consent issue was decided. The pertinent finding (No. 13) provides:
“Gallatin County Sheriff’s deputies Pearson, Brown and Schumacher, took up various vantage points around the pool. Deputy Schumacher was stationed in the ceiling above the pool and could observe all that occurred therein. He saw a white haired old man with a white beard approaching Chris, who attempted to get away. The old man eventually caught up with Chris and picked *10 him up by his feet and let him down and then approached Chris and appeared to thrust his hand down into Chris’ swimming suit. Chris pulled away and then immediately got out of the pool. Chris stated that the old white haired man had put his hand into his swimming suit and felt his ‘private’. The old man also asked, as he put his hand into Chris’ pants, if Chris wanted to get a hard on. Chris felt mad after this happened.” (Emphasis added.)
The conclusion of law with relation to this same event in relation to the consent issue (No. 9) provides:
“That on or about the 17th day of December, 1978, the defendant, John L. Price, age 65, subjected Chris, a child aged ten, not his spouse, to sexual contact without consent.” (Emphasis added.)
As we have already stated, lack of consent could be proved by circumstantial evidence, and there was sufficient evidence to support a determination of lack of consent. In this situation, there are well-established rules of appellate law which apply to sustain the judgment of conviction entered by the Court on the counts of sexual assault. In State v. Duncan (1979), 181 Mont. 382, 593 P.2d 1026, 1034, 36 St.Rep. 748, 758, we said a District Court in a criminal bench trial was under no statutory duty, except in death penalty cases (section 46-18-306, MCA), to make findings, but was merely obliged to enter a general verdict of innocence of guilt. Error of the District Court is not presumed, State v. Boe (1963), 143 Mont. 141, 388 P.2d 372; indeed every presumption is in favor of a judgment of conviction on appeal if any substantial evidence supports it. State v. Stoddard (1966), 147 Mont. 402, 412 P.2d 827.
The conclusions of law reached by the District Court could be construed to mean that the court found lack of the victim’s consent from his incapacity as a 10-year-old to consent, or that in any event the boy did not consent. Conclusions of law reached by a trial court do not enjoy the same level of inviolability that findings of fact are accorded on appeal (see e. g. Rule 52(a), M.R.Civ.P.). This Court is in at least an equal position with the District Court to determine the appropriate conclusion of law to be reached from the facts found in a case. Since we have found that there was suffi *11 cient evidence adduced to support a conclusion that the boy did not in fact consent to defendant’s unlawful acts, all the presumptions are in favor of the judgment of conviction, as we have shown. We, therefore, sustain the conviction on the sexual assault counts.
THE OBSCENITY ISSUE
We have already set forth the facts leading to the obscenity conviction — in essence, that the defendant in November 1978, exposed his sexual organs to the young boy and his sister while they were at the Bozeman Hot Springs swimming pool. As a result of this exposure, defendant was charged with and convicted of obscenity under section 45-8-201, MCA. Defendant acknowledges that the exposure was sufficient to subject him to a charge of indecent exposure, but argues that the State chose instead to charge him with obscenity, and thus, must prove each of the requirements under the obscenity statute. He argues that the obscenity conviction cannot be sustained because the State did not establish at trial, as an evidentiary proposition, that based on contemporary community standards, the conduct involved appealed to the prurient interest in sex. See section 45-8-20 l(2)(a) and (b), MCA. The State acknowledges that it presented no evidence on this question, but argues that it is not required to establish an evidentiary foundation with regard to contemporary community standards and the appeal to a prurient interest in sex.
In arguing that it need not present trial evidence with regard to contemporary community standards, appeal to prurient interest or patent offensiveness, the State relies on Kaplan v. California (1973), 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492, which seemingly holds that all that is required is for the alleged obscene material to be introduced into evidence and a subsequent jury verdict stamping the material as obscene. Whatever the holding in Kaplan, however, we cannot consider it as controlling the issue here.
The first reason that Kaplan is not controlling is that this state has enacted specific legislation setting forth the elements which must be proved for an obscenity conviction. Section *12 45-8-20 l(2)(b), MCA, requires that the conduct involved must appeal to the prurient interest in sex, and requires that this standard must be determined by contemporary community standards. Nowhere does this statute permit the trier of fact to make these determinations without an evidentiary basis in the trial record. This being the case, the findings and conclusions of the trial court, absent the required evidentiary basis, cannot be upheld.
We concede that the portion of the obscenity statute that requires proof of contemporary community standard refers to “material”, and that the obscenity statute could be stretched to mean that community standards do not apply to exposure crimes, since “material” is not involved. This defendant undoubtedly committed a crime of indecent exposure, but was charged under the obscenity statute. That statute is imprecise when applied to this crime, because the obscenity statute was fashioned to meet First Amendment implications in obscenity cases. So this Court comes again to a situation where a conviction must be set aside for lack of proof of the crime charged.
This Court has received some criticism because we have reversed convictions in cases such as this. Generally, we have refrained from adverse comment in our decisions, because judicial opinions are not meant to be instruments of public relations. Here, we will offer only this plain advice: charge a flasher as a flasher and not as a strip-tease artist.
The obscenity conviction must be reversed and dismissed.
THE SENTENCING ISSUE
About five minutes before the sentencing hearing was to begin, the State notified defendant that it would call two female witnesses to testify that some 11 years before the defendant had touched them in a sexual manner very similar to this case. Defendant objected to this testimony, but the objection was overruled. Defendant did not, however, ask for a continuance. The court admitted the testimony but did not refer to it in any manner in its sentencing judgment.
One woman, 21 years old, testified that the defendant exposed *13 himself to her during the summer of 1968, when she was 11 years old. She also testified that during this same summer the defendant touched her sexually — the ostensible justification for the touching being her complaint that her legs were sore after a day of horseback riding. Finally, she testified that during this summer she frequently saw the defendant expose himself at the swimming pool by dropping his swimming trunks. She could not specify the dates on which these activities allegedly took place nor was her testimony corroborated in any manner.
The other woman, 24 years old, testified that during the summer of 1966, when she was 10 years old, she was sitting on the defendant’s lap after riding horses, and the defendant caressed her sexually. Like the first witness, she could not establish the dates or times when this happened, and neither was her testimony corroborated in any manner.
Defendant contends that this surprise testimony deprived him of any meaningful opportunity to refute the charges. He argues, furthermore, that the testimony as to the events so remote in time had the effect of depriving defendant of meaningfully rebutting the testimony. The State, on the other hand, admits that it planned to surprise defendant by this testimony at the sentencing hearing. Answering the defendant’s remoteness argument, the State argues that the evidence was relevant in all events because a sentencing court should have before it all available evidence concerning a defendant’s past. Next, the State argues that failure to give advance notice of this testimony was sufficiently ameliorated because defendant had an oportunity to cross-examine both witnesses. Finally, the State urges that defendant is in no position to press this point on appeal because he waived such right by failing to ask for a continuance of the sentencing hearing in order to better meet the evidence offered.
Because of the State’s denial of a reasonable notice to defendant, any contention of the State that defendant waived his right to complain because he did not request a continuance, falls on deaf ears. To hold otherwise would reward the State for its failure to comply *14 with one of the pillars of due process of law, fair notice. For this reason alone, we are compelled to order resentencing.
Now that the defendant has notice, he will at the time of resentencing in the case have the opportunity to provide rebuttal evidence on the prior crimes if such evidence is admitted. The question of admissibility of such evidence as having a bearing on the sentencing, and as to whether it is remote and uncorroborated, remains one for the reasonable discretion of the trial court. The defendant’s character, background, history, and mental and physical condition are proper subjects for the District Court to consider in determining a proper sentence. Section 46-18-101, MCA. As far as the record now shows, although the trial court admitted this evidence at the sentencing hearing, it was not alluded to as a factor in the sentence received by the defendant.
The convictions of sexual assault are affirmed. The cause is remanded for a new sentencing hearing on those convictions. The conviction of obscenity is reversed and the cause ordered dismissed.
MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and HARRISON concur.
MR. JUSTICE SHEA will file a written dissent later.